*State v. Rice, Nero & Miller*, Nos. 96, 97 & 98, September Term, 2015
*White & Goodson v. State*, No. 99, September Term, 2015

**CRIMINAL LAW — PROPER PARTIES TO AN APPEAL** — The proper parties to an appeal are those who are "so closely and directly connected with the subject matter" of the litigation that they "will either gain or lose" by the court's decision. In the context of a trial court's decision to compel a witness to give immunized testimony, the witness is the proper party to the appeal, not the defendant in whose trial the witness will testify. As a result, only Officer Porter has standing to challenge the trial court's decision to compel his testimony, not Lieutenant Rice, Officer Nero, or Officer Miller.

**CRIMINAL LAW — STATE'S RIGHT TO APPEAL** — An order issued by a court exercising criminal jurisdiction may nevertheless constitute an appealable final judgment if the relief sought is collateral to the criminal case against the defendant and settles the matter between the parties to whom the order applies. Because a motion to compel a witness to testify in a criminal case is collateral to the underlying prosecution and concerns only the State and the witness, resolution of the motion constitutes a final judgment that is immediately appealable.

**COURTS AND JUDICIAL PROCEEDINGS — MOTION TO COMPEL IMMUNIZED TESTIMONY** — Courts & Judicial Proceedings Article § 9-123 requires a trial court to order compelled immunized testimony once the court has verified that the State satisfied the statutory pleading requirements. The court lacks the discretion to deny a properly pled motion to compel on the ground that the compelled testimony is not in the public interest.

**COMPULSORY SELF-INCRIMINATION — FIFTH AMENDMENT —** Compelling a witness to testify under a grant of use and derivative use immunity satisfies the requirements of the Fifth Amendment even if that witness may later face trial regarding the same subject matter. If the witness is later prosecuted, the State bears a "heavy burden" to prove that the evidence offered was not derived from the witness's immunized testimony. Any concern that the State will not satisfy its burden is premature until the witness's trial.

**COMPULSORY SELF-INCRIMINATION — ARTICLE 22** — For purposes of a witness's entitlement to invoke the privilege against compulsory self-incrimination, Article 22 of the Maryland Declaration of Rights is interpreted as *in pari materia* with the Fifth Amendment. Because use and derivative use immunity sufficiently protects a witness's Fifth Amendment privilege, it likewise protects a witness's privilege under the State constitution.

No. 96 – Circuit Court for Baltimore City
Case No. 115141035

No. 97 – Circuit Court for Baltimore City
Case No. 115141033

No. 98 – Circuit Court for Baltimore City
Case No. 115141034

No. 99 – Circuit Court for Baltimore City
Case Nos. 115141036 & 115141032

Argued: March 3, 2016

IN THE COURT OF APPEALS

OF MARYLAND

Nos. 96, 97, 98 & 99

September Term, 2015
_____

STATE OF MARYLAND

v.

BRIAN RICE
_____

STATE OF MARYLAND

v.

EDWARD NERO
_____

STATE OF MARYLAND

v.

GARRETT MILLER
_____

ALICIA WHITE & CAESAR GOODSON

v.

STATE OF MARYLAND
_____

Barbera, C.J.
*Battaglia
Greene
Adkins
McDonald
Watts
Hotten,

JJ.

_____

Opinion by Barbera, C.J.
_____

Filed:  May 20, 2016

*Battaglia, J., now retired, participated in the hearing and conference of the case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, she also participated in the decision and adoption of this opinion.

On April 12, 2015, Freddie Gray suffered an injury while in police custody; one week later, he died from those injuries. The State charged six Baltimore City police officers with crimes in connection with the events leading up to Mr. Gray's death—Officer William Porter, Officer Caesar Goodson, Sergeant Alicia White, Lieutenant Brian Rice, Officer Edward Nero, and Officer Garrett Miller. The first of those officers to face trial was Officer Porter. His trial began on November 30, 2015, and, after the jurors could not reach a verdict, it ended in a mistrial on December 16, 2015. At the heart of this appeal is whether Officer Porter, who the State has indicated it will retry, can now be compelled by the State, before his retrial, to provide immunized testimony against the remaining officers. In the cases of Officer Goodson and Sergeant White, the trial court granted the State's motion to compel Officer Porter's testimony. In the cases of Lieutenant Rice, Officer Nero, and Officer Miller, the trial court denied that same motion.

On March 8, 2016, we issued two Per Curiam Orders affirming the judgments of the Circuit Court in Officer Goodson's and Sergeant White's cases; reversing the judgments of the Circuit Court in the cases of Lieutenant Rice, Officer Nero, and Officer Miller; and lifting the stays in each case to allow the trials to move forward. We now explain our reasons for those Orders. We hold that the State's compelling Officer Porter to testify in the trials of his fellow officers, under the grant of use and derivative use immunity, does not violate Officer Porter's privilege against compelled self-incrimination under the Fifth Amendment to the United States Constitution and Article 22 of the Maryland Declaration of Rights. We further hold that the trial court lacks the discretion to deny a properly pled motion to compel immunized testimony and that the denial of such a

motion constitutes a final judgment from which the State can appeal immediately.

I.

*Witness Immunity*

Most lawyers and lay people alike learn from law school, television, or movies that all persons in this country enjoy a privilege to be free from compelled self-incrimination. What many may not know is that the prosecutor may supplant that privilege through the grant of immunity to one whose testimony is sought in a criminal trial. Indeed, the Supreme Court of the United States has recognized that the power of the State to compel a witness to testify is at the core of the proper functioning of our criminal justice system. *Kastigar v. United States*, 406 U.S. 441, 443-44 (1972). A witness's constitutional privilege, guaranteed by the Fifth Amendment to the United States Constitution and Article 22 of the Maryland Declaration of Rights, is preserved through application of immunity statutes, which balance the witness's privilege against compelled self-incrimination with the legitimate power of government to compel persons to testify. U.S. Const. amend. V ("No person . . . shall be compelled in any criminal case to be a witness against himself[.]"); Md. Decl. of Rts. art. 22 ("That no man ought to be compelled to give evidence against himself in a criminal case."). Because "many offenses are of such a character that the only persons capable of giving useful testimony are those implicated in the crime," immunity statutes have been referred to as "part of our constitutional fabric." *Kastigar*, 406 U.S. at 446-47 (quoting *Ullmann v. United States*, 350 U.S. 422, 438 (1956)).

Three varieties of immunity have developed in Anglo-American jurisprudence, each offering varied levels of protection to the witness. "Use" immunity offers the least

2

protection—although the State is barred from using any immunized testimony against the witness in a later criminal prosecution, the State is not precluded from using evidence derived from that testimony. *See id.* at 454 (providing that use immunity statutes do not "prevent the use of [the witness's] testimony to search out other testimony to be used in evidence against him or his property, in a criminal proceeding" (quoting *Counselman v. Hitchcock*, 142 U.S. 547, 564 (1892))). On the other end of the spectrum is "transactional immunity," which precludes the State from prosecuting the witness for any conduct arising out of the substance of the witness's testimony. *In re Criminal Investigation No. 1-162*, 307 Md. 674, 684 (1986). Between those two ends is "use and derivative use" immunity, where the State is precluded from using in a later prosecution both the witness's compelled testimony and any information directly or indirectly derived from that testimony. *Id.*

The Supreme Court held in *Counselman* that use immunity does not afford a witness sufficient protection to supplant the Fifth Amendment privilege. 142 U.S. at 564. The Court concluded that use immunity does not protect the witness to the same extent that a claim of the privilege would protect him because it does not "prevent the use of his testimony to search out other testimony to be used in evidence against him." *Id.* at 564-65. Because the Court also stated that a valid immunity statute "must afford *absolute immunity* against future prosecution for the offence to which the question relates," that decision was long interpreted to mean that transactional immunity was required to preserve a witness's Fifth Amendment privilege. *See id.* at 586 (emphasis added); *see also Pillsbury Co. v. Conboy*, 459 U.S. 248, 275 (1983) (Blackmun, J., concurring in the judgment) (noting that the courts interpreted *Counselman* as requiring transactional immunity).

The Supreme Court clarified in *Kastigar*, however, that use and derivative use immunity is coextensive with the scope of a witness's Fifth Amendment privilege and transactional immunity is not required to pass constitutional muster. *See* 406 U.S. at 453 ("Transactional immunity, which accords full immunity from prosecution for the offense to which the compelled testimony relates, affords the witness considerably broader protection than does the Fifth Amendment privilege."). The Court explained that a grant of immunity need only provide that level of protection that the exercise of the privilege itself would offer. *Id.* at 453-54. Because the Fifth Amendment privilege is designed to prevent the witness from "being forced to give testimony leading to the infliction of penalties affixed to criminal acts," immunizing the witness's "compelled testimony, as well as evidence derived directly and indirectly therefrom, affords this protection." *Id.* at 453 (internal quotation marks and alterations omitted).

The *Kastigar* Court cautioned, however, that, once a witness receives use and derivative use immunity, the State will bear a "heavy burden" to prove that the evidence it seeks to introduce against the witness in a later prosecution was not tainted by the immunized testimony. *Id.* at 461. The State has an "affirmative duty to prove that the evidence it proposes to use is derived from a legitimate source wholly independent of the compelled testimony." *Id.* at 460.

To ensure that the State has met its burden, the trial court holds a pre-trial "*Kastigar* hearing," at which the State must demonstrate the independent nature of the evidence and the defendant has the opportunity to cross-examine witnesses. *See United States v. Cantu*, 185 F.3d 298, 304 (5th Cir. 1999). *Kastigar* instructed that the State's burden is beyond a

mere "negation of taint." 406 U.S. at 460. Instead, "to establish a 'wholly independent' source, the government must demonstrate that each step of the investigative chain through which the evidence was obtained is untainted." *United States v. Schmidgall*, 25 F.3d 1523, 1528 (11th Cir. 1994).

*Maryland's Immunity Statute*

Since *Kastigar* was decided in 1972, many states, including Maryland, amended their immunity statutes to resemble the federal immunity statute sanctioned by *Kastigar* and provide for use and derivative use immunity. 3 Wayne R. LaFave, *Criminal Procedure* § 8.11(b) (4th ed. 2015). Maryland's statute, entitled "Witness immunity for compulsory testimony," accordingly provides that a witness may not refuse to testify on self-incrimination grounds when the court issues an order compelling the testimony under a grant of use and derivative use immunity. Md. Code Ann., Cts. & Jud. Proc. ("CJ") § 9-123(b)(1) (2014, 2013 Repl. Vol., 2015 Supp.). When such an order is issued, the statute instructs that "[n]o testimony or other information compelled under the order, and no information directly or indirectly derived from the testimony or other information, may be used against the witness in any criminal case, except in a prosecution for perjury, obstruction of justice, or otherwise failing to comply with the order." CJ § 9-123(b)(2).

The statute also prescribes in subsections (c) and (d) the procedure for obtaining an order and the prerequisites the State must satisfy to procure an order compelling witness testimony. That procedure reads as follows:

> (c) *Order requiring testimony.* — (1) If an individual has been, or may be, called to testify or provide other information in a criminal prosecution or a proceeding before a grand jury of the State, the court in which the proceeding

5

is or may be held shall issue, on the request of the prosecutor[1] made in accordance with subsection (d) of this section, an order requiring the individual to give testimony or provide other information which the individual has refused to give or provide on the basis of the individual's privilege against self-incrimination.

(2) The order shall have the effect provided under subsection (b) of this section.

(d) *Prerequisites for order.* — If a prosecutor seeks to compel an individual to testify or provide other information, the prosecutor shall request, by written motion, the court to issue an order under subsection (c) of this section when the prosecutor determines that:

(1) The testimony or other information from the individual may be necessary to the public interest; and

(2) The individual has refused or is likely to refuse to testify or provide other information on the basis of the individual's privilege against self-incrimination.

CJ § 9-123(c)–(d). The present case concerns both the substantive and the procedural aspects of the immunity statute. Before we delve further into the issues, however, it is necessary to describe how the proceedings against the officers progressed in the trial court and the Court of Special Appeals.

II.

*No. 99—Goodson & White v. State*

The trials of all six officers were specially assigned to the Honorable Barry Williams

---

[1] "Prosecutor" is defined as:

(i)   The State's Attorney for a county;
(ii)  A Deputy State's Attorney;
(iii) The Attorney General of the State;
(iv)  A Deputy Attorney General or designated Assistant Attorney General; or
(v)   The State Prosecutor or Deputy State Prosecutor.

Md. Code Ann., Cts. & Jud. Proc. ("CJ") § 9-123(a)(3) (2014, 2013 Repl. Vol., 2015 Supp.).

in the Circuit Court for Baltimore City. We mentioned at the outset that Officer Porter had been tried first and that the trial had ended in a mistrial. Before then, by letter dated September 15, 2015, the State notified the Circuit Court and the parties that Officer Porter was "a necessary and material witness" in Officer Goodson's and Sergeant White's trials, and it was therefore "imperative" that he be tried first. In compliance with that request, the Circuit Court issued scheduling orders providing that Officer Goodson's trial was scheduled to begin January 11, 2016, and Sergeant White's trial was to begin February 8, 2016—both of which were after the mistrial was declared in Officer Porter's trial. On December 11, 2015, the State served Officer Porter with two subpoenas, one compelling him to appear and testify in Officer Goodson's trial and the other compelling the same in Sergeant White's trial. Officer Porter moved to quash both subpoenas, arguing that application of CJ § 9-123 is unconstitutional as applied to him because the statute does not preserve his broader rights against compelled self-incrimination provided by Article 22 of the Maryland Declaration of Rights, nor does the State's grant of immunity protect him from a federal prosecution or a later State prosecution for perjury. He also contended that the State would be suborning perjury by compelling him to testify because the State had claimed during his trial that he was not telling the truth.

On January 6, 2016, the State filed in Officer Goodson's case a Motion to Compel a Witness to Testify Pursuant to Section 9-123 of the Courts and Judicial Proceedings Article. Tracing the language of the statute, the State alleged that the State's Attorney had determined that Officer Porter's testimony "may be necessary to the public interest" and that Officer Porter had refused to testify on the ground of compelled self-incrimination.

7

The motion was signed by Marilyn Mosby, State's Attorney for Baltimore City.

The State also responded to Officer Porter's motion to quash the State's subpoena. The State argued that Article 22 has been interpreted as *in pari materia* with the Fifth Amendment and, consequently, CJ § 9-123 sufficiently preserves Officer Porter's privilege against compelled self-incrimination. The State also pointed out that Officer Porter's immunized testimony could not be used in a federal prosecution and that he has no constitutional right to commit perjury. The State emphasized that Officer Porter's concerns related to the State's ability to retry him, rather than the State's ability to compel his testimony, and that those concerns would be addressed at a *Kastigar* hearing.

The Circuit Court held a hearing on the motion to quash and the motion to compel, at which the State, Officer Goodson, and Officer Porter were present along with their respective counsel. Although Sergeant White and her counsel were not at the hearing, the parties acknowledged that all arguments would apply equally to her case. At the hearing, Officer Porter testified that he intended to invoke his privilege against compelled self-incrimination under the Fifth Amendment and Article 22 of the Maryland Declaration of Rights, if called upon to testify at either trial.

The Circuit Court denied Officer Porter's motion to quash and granted the State's motion to compel. The court disagreed with Officer Porter's contention that CJ § 9-123 violates either or both the Fifth Amendment and Article 22. The court reasoned that, according to the Supreme Court, use and derivative use immunity is sufficient to protect the witness "whether it happens to be a person who has been charged, is pending a charge, or is on appeal." In response to Officer Porter's argument that his retrial might be tainted

8

by his immunized testimony, the court recognized that it would be "the State's concern because the burden would be on them at that point."

After the court ruled in its favor, the State then filed a motion to compel Officer Porter's testimony in Sergeant White's case, which the Circuit Court granted. The Circuit Court's orders compelling Officer Porter's testimony provided that Officer Porter may not refuse to testify on the basis of his privilege against self-incrimination, and that neither the testimony compelled pursuant to the order nor "information directly or indirectly derived from the testimony of Officer Porter compelled pursuant to this Order, may be used against Officer Porter in any criminal case, except in a prosecution for perjury, obstruction of justice, or otherwise failing to comply with this Order."

Officer Porter noted a timely appeal to the Court of Special Appeals. The appeals in Officer Goodson's and Sergeant White's cases were consolidated, and the orders compelling Officer Porter's testimony were stayed along with the trials of Officer Goodson and Sergeant White.

*Nos. 96, 97, and 98—State v. Rice, Nero, and Miller*

On January 13, 2016, the State sent a letter to the Circuit Court requesting a postponement of the trials of Defendants, Lieutenant Rice, Officer Nero, and Officer Miller, until resolution of Officer Porter's appeal.[2] The State asserted that, after observing Officer Porter's defense in his own trial, "the State is persuaded of the importance of

---

[2] Although Lieutenant Rice, Officer Nero, and Officer Miller identify themselves as "Appellees," we will refer to them throughout this opinion as "Defendants" because, for reasons we will explain in Part III(a), *infra*, Defendants are not the proper parties to this appeal.

Porter's testimony in the trials of Miller, Nero, and Rice." On January 14, 2016, the State moved to compel Officer Porter's testimony in Defendants' trials. Just as the motions filed in the cases of Officer Goodson and Sergeant White, the State asserted that the State's Attorney had determined that Officer Porter's testimony "may be necessary to the public interest" and that he was likely to refuse to testify on the basis of self-incrimination. The motions were likewise signed by State's Attorney Marilyn Mosby.

Defendants and Officer Porter each filed oppositions to that motion. Defendants argued that the State failed to explain why Officer Porter's testimony was necessary and that the filing of the motion was the first indication Defendants received that the State might call Officer Porter as a witness. Officer Porter similarly asserted in his motion that his testimony was not necessary to the public interest and that compelling his testimony would infringe upon his Fifth Amendment and Article 22 rights. The State responded by asserting that Defendants lacked standing to object to the State's motion because CJ § 9-123 concerned only the State and Officer Porter, the witness to be compelled. The State further argued that the court was "statutorily required to issue the Order" because the motion to compel complied with the pleading requirements in CJ § 9-123.

The Circuit Court heard a consolidated argument on the State's motions vis-à-vis all three Defendants on January 20, 2016. During that hearing, the Circuit Court also heard briefly from counsel for Sergeant White, who had moved to strike the order compelling Officer Porter to testify at her trial. In denying the motion to strike, the Circuit Court indicated that Sergeant White lacked standing to challenge the order, stating that "I do not believe that necessarily you had a right to make any arguments at all." With respect to the

10

State's motions to compel in the remaining three cases, the Circuit Court requested the prosecutor to proffer the State's reasons for compelling Officer Porter's testimony. Although the State contended that a proffer was not necessary "once the State's Attorney has made that determination," the prosecutor described the helpful testimony that Officer Porter could provide. The Circuit Court also asked the State what the court would be able to do if the court determined that the motion to compel was "a ruse and subterfuge." The State responded that the motion was not subterfuge and explained again that it would violate separation of powers to interfere with the State's Attorney's immunity determination. The State further explained that it was "try[ing] to learn something from [its] experience in trying Mr. Porter," and that the State has "the right to change [its] mind."

After hearing argument, the Circuit Court denied the State's motions on the record. The court recognized that "the State has broad power to seek immunity" and that "the Court shall issue an order requiring the individual to give testimony" when "the prosecutor determines that the testimony may be necessary to the public interest." Nevertheless, the court found that the State's request "has more to do with getting around the Court's postponement request than anything else," which the court found was not "appropriate." The court believed the State's contention that the prosecutors had made the determination after reassessing the value of Officer Porter's testimony. Nonetheless, the court stated that, "in the manner in which [the State is] seeking to immunize . . . it does seem to this Court, candidly speaking, that it's for a dual purpose: to get the postponement that they want . . . and possibly for the reason stated, that Mr. Porter's testimony is relevant[.]" The court also noted its concerns with the State's proffer of the value of Officer Porter's testimony,

11

"the concerns that this Court has with the speedy trial rights of the Defendants, [and] the concern that this Court has with the position that Mr. Porter will be placed in by the request of the State."

In the court's written order, the court concluded that the State was using CJ § 9-123 "in an attempt to control the schedule and order of the trials and to circumvent this Court's ruling that postponement in these cases was not appropriate." Under such circumstances, the court opined that, "rather than become a rubber-stamp for the State's Attorney, there should be a two-step process in granting immunity under § 9-123 when, and only when, the motives of the requesting party are called into question." Consequently, the court denied the motions on the ground that it was "not in the public interest" for the State to file the motions to compel as "subterfuge" to resurrect the trial schedule the State had originally requested.

The State noted a timely appeal to the Court of Special Appeals and moved in the Circuit Court, unsuccessfully, to stay Defendants' trials. The same day the Circuit Court denied the motions to stay, the State petitioned this Court for a writ of certiorari to review all five appeals prior to any decision by the Court of Special Appeals. Noting that the Circuit Court had granted its motion to compel in two cases but denied it in three others, the State contended that these cases "provide an appropriate vehicle for this Court to consider the application of § 9-123 from all sides." Defendants moved to dismiss the State's petition on the ground that the State lacked the right to appeal. We granted the State's petition in all five cases and stayed all proceedings in the Circuit Court.

In Officer Porter's appeal in No. 99, we were asked to decide:

12

Does Courts and Judicial Proceedings Article, Section 9-123 provide Porter sufficient protection against self-incrimination to allow his testimony to be compelled in the trials of Caesar Goodson and Alicia White?

Our orders granting the State's petitions in Nos. 96, 97, and 98 provided that the issue was:

Does Courts and Judicial Proceedings Article, § 9-123 require a court to order compelled, immunized witness testimony after verifying that the statutory pleading requirements of the prosecutor's motion to compel have been met, or does the statute instead permit a court to substitute its own discretion and judgment as to whether compelling the witness's testimony may be necessary to the public interest such that the court may deny a prosecutor's motion to compel even if the motion complies with the statute's pleading requirements?

We also directed the State and Defendants to brief the following question:

Whether the circuit court's order denying the State's motion to compel Officer William Porter to testify is appealable i.e. whether the order is a final judgment or an interlocutory order subject to appeal or an order appealable on any other basis?

III.

(a)

We must first determine the proper parties to the appeals in Nos. 96, 97, and 98. We agree with the State that Officer Porter, not Defendants, is the proper Appellee in those cases. The proper parties to an appeal are those who are "directly interested in the subject-matter." *Hall v. Jack*, 32 Md. 253, 263 (1870). The party's interest must be "so closely and directly connected with the subject matter that the [party] will either gain or lose by the direct legal operation and effect of the decree." *Lickle v. Boone*, 187 Md. 579, 584 (1947). As a result, this Court has permitted a non-party to appeal "decisions affecting the party's direct and substantial interests." *Hoile v. State*, 404 Md. 591, 606-07 (2008) (internal quotation marks omitted). In this case, the person who is "directly interested in

13

the subject matter" of the Circuit Court's decision whether to compel Officer Porter to testify is Officer Porter himself, rather than the defendants in whose trials Officer Porter will ultimately testify.

It is not dispositive that Lieutenant Rice, Officer Nero, and Officer Miller were the named defendants in the actions in which the motions to compel were filed. In *Curley v. Wolf*, 173 Md. 393, 399 (1938), we dismissed an appeal filed by a named party to the litigation because we concluded that the named party would not "be affected by the decision," and was "therefore not a proper appellant." Defendants in these cases similarly are not directly affected by the decision. Defendants assert that they have an interest in the appeal by virtue of "their speedy trial rights and the rights to request the exclusion of evidence that is not relevant." A challenge to the State's motions to compel Officer Porter's testimony is not the proper vehicle for protecting those interests. To the extent that any one of Defendants believes his right to a speedy trial has been violated as a result of the stays imposed in this case, the proper remedy is not to contest the motions to compel, but rather to move to dismiss the charges. *See State v. Hicks*, 285 Md. 310, 318 (1979); Md. Code Ann., Crim. Proc. § 6-103 (2001, 2008 Repl. Vol.). Likewise, the State's request pursuant to CJ § 9-123 only concerns whether Officer Porter can refuse to testify on the basis of compelled self-incrimination. If his testimony is not relevant or is otherwise inadmissible, Defendants may object on those bases if and when Officer Porter takes the stand.

Notably, the Circuit Court in this case indicated to counsel for Sergeant White that she had no standing to object to the State's motion. Indeed, it is often the case in witness

14

immunity actions that the witness and the State are the parties to the appeal. *See, e.g., In re Criminal Investigation No. 1-162*, 307 Md. at 679-80. In *Smith v. Commonwealth*, 436 N.E.2d 377 (Mass. 1982), the Supreme Court of Massachusetts held that "a defendant has no standing to argue that the testimony of purportedly immunized witnesses is the product of improper grants of immunity." *Id.* at 379 (internal quotation marks and alterations omitted). The court reasoned that:

> The privilege against self-incrimination is a personal right of the witness, and one that the witness is in a position to protect by his own means. *Commonwealth v. Simpson*, [345 N.E.2d 899, 902 (Mass. 1976)]. *Goldstein v. United States*, 316 U.S. 114, 121 n.11, 62 S.Ct. 1000, 1004 n.11, 86 L.Ed. 1312 (1942). Moreover, the statutory procedure for a grant of immunity is designed to accommodate the witness's rights and the State's need for evidence. The statute is simply not addressed to the interests of defendants.

*Id.* We agree. Therefore, the State's appeal is a contest between the State and Officer Porter alone, not Defendants.[3]

(b)

We now must address whether the State's appeals in Nos. 96, 97, and 98 are properly before this Court. In Maryland, the right to appeal exists entirely by statute. *See State v. Manck*, 385 Md. 581, 596-97 (2005). CJ § 12-301 sets forth a general right to appeal from a final judgment. It provides that:

> Except as provided in § 12-302 of this subtitle, a party may appeal from a final judgment entered in a civil or criminal case by a circuit court. The right of appeal exists from a final judgment entered by a court in the exercise of original, special, limited, statutory jurisdiction, unless in a particular case the

---

[3] Notwithstanding that Defendants are not properly before us, we may nevertheless consider the remainder of the State's appeal because Officer Porter, the proper Appellee, joined in Defendants' brief. We therefore shall consider Defendants' arguments in Parts III and IV of this opinion to be those of Officer Porter.

15

right of appeal is expressly denied by law. In a criminal case, the defendant may appeal even though imposition or execution of sentence has been suspended. In a civil case, a plaintiff who has accepted a remittitur may cross-appeal from the final judgment.

CJ § 12-302 provides the exceptions to and limitations on the general right to appeal conferred by CJ § 12-301. *Pack Shack, Inc. v. Howard County*, 371 Md. 243, 250 (2002). CJ § 12-302(c) limits the State's right to appeal "[i]n a criminal case" to a few enumerated circumstances not applicable here.[4] When the State seeks to appeal from a criminal case, "[u]nless the issue presented may properly be categorized as one of the actions enumerated in the statute, the State has no power to seek appellate review." *Manck*, 385 Md. at 597-98. CJ § 12-302, however, does not limit the State's right to appeal from a final judgment in a civil matter, and it is well settled that the State possesses the same right in this regard as any other party. *See State v. WBAL-TV*, 187 Md. App. 135, 146 (2009) (noting that the State "has the same right under CJ § 12-301 as other parties to appeal in a civil proceeding"); *State v. Hicks*, 139 Md. App. 1, 6 (2001) (holding that a coram nobis proceeding is a civil proceeding and consequently "the State is not limited to the circumstances described in CJ § 12-302(c)"). We must therefore decide if the State is

---

[4] Subsection (c) grants to the State the right to "appeal from a final judgment granting a motion to dismiss or quashing or dismissing any indictment, information, presentment, or inquisition." CJ § 12-302(c)(2). The State further may appeal a trial court's failure to impose a statutorily mandated sentence or the court's imposition of a sentence in violation of the Maryland Rules. CJ § 12-302(c)(3). Subsection (4)(i) provides that, along with other requirements, in a case involving a crime of violence, "the State may appeal from a decision of a trial court that excludes evidence offered by the State . . . in violation of the Constitution of the United States, the Maryland Constitution, or the Maryland Declaration of Rights." The State does not contend that any of these enumerated circumstances applies to this case.

16

appealing from a criminal case or, alternatively, if the Circuit Court's orders denying the State's motions to compel constitute a civil final judgment, albeit that the motions were filed in the underlying criminal cases.

We have held that an appeal from an order issued by a court exercising criminal jurisdiction is not constrained by CJ § 12-302(c) if the relief sought is collateral to the underlying criminal case against the defendant. *See In re Special Investigation No. 231*, 295 Md. 366, 370 (1983). Such an order can be appealed under CJ § 12-301 if it "settles the rights of the parties or concludes the cause." *Id.* The issue most often arises in the context of grand jury proceedings. In *No. 231*, for example, we held that the State could appeal from the denial of a motion to disqualify an attorney from representing four persons in a grand jury proceeding. *Id.* We explained that the order constituted a final judgment because "[o]nce the motion was denied there was nothing more to be done in this particular case" and "the order of the trial judge here settled the rights of the parties and terminated the cause." *Id.*; *accord In re Special Investigation No. 236*, 295 Md. 573, 575 (1983) (holding that an appeal from the grant of a motion for the return of financial records from a grand jury constituted a final judgment for the same reasons).[5]

---

[5] In *In re Criminal Investigation No. 1-162*, 307 Md. 674, 679-80 (1986), we implicitly allowed the State to appeal from the denial of a motion to compel immunized witnesses to answer questions posed by a grand jury. Although we did not discuss expressly the issue of the State's right to appeal, nor did the Court of Special Appeals in that case, the State raised the argument in its brief before the intermediate appellate court. The State asserted that the circuit court's denial of its motion to compel immunized testimony constituted a final judgment, and, insofar as we can discern, the witnesses challenged neither the merits of that argument nor the Court of Special Appeals's failure to address the State's right to appeal in its opinion. Because the right to appeal is a question of jurisdiction, the Court

17

The Court of Special Appeals has held likewise. In *State v. Strickland*, 42 Md. App. 357, 358 (1979), a defendant filed a motion in his criminal case requesting the State to return money the State had introduced as an exhibit during his guilty plea hearing. When the court ordered the State to return the funds, the State appealed. *Id.* at 358-59. In ruling on the defendant's motion to dismiss the appeal on the ground that it arose from a criminal case, the Court of Special Appeals recognized that CJ § 12-302(c) did not necessarily govern the appeal. "It does not follow . . . that simply because a motion is filed in a court that exercises criminal jurisdiction, that the proceeding arising from the motion must, *ipso facto*, be criminal in nature." *Id.* at 359. Instead, the court concluded that the motion was "more akin to a replevin, a civil action, rather than a criminal proceeding." *Id.* As a result, the court concluded that, even though the motion was filed in a criminal case, "that aspect of the case is civil, not criminal, and it matters not one whit that the money was introduced as evidence in a trial for violation of a criminal statute." *Id.* at 360.

Similarly, in *WBAL*, the State appealed from an order granting a motion filed by a non-party to a criminal trial seeking access to trial exhibits in the criminal case. 187 Md.

would have been obligated to address it if the Court had any doubt. *See Johnson v. Johnson*, 423 Md. 602, 605-06 (2011) (noting that "an order of a circuit court must be appealable in order to confer jurisdiction upon an appellate court, and this jurisdictional issue, if noticed by an appellate court, will be addressed *sua sponte*"). We may therefore infer that the State's appeal was properly before the *In re Criminal Investigation No. 1-162* Court. We disagree with Defendants' assertion that *No. 1-162* is not helpful because our opinion did not address explicitly the State's right to appeal. While Defendants point out that issues "which merely lurk in the record . . . are not to be considered as having been so decided as to constitute precedents," (quoting *Webster v. Fall*, 266 U.S. 507, 511 (1925)), a question as to our jurisdiction to hear an appeal is hardly one that "lurks in the record" when the State squarely addresses the issue in its brief.

App. at 142. The Court of Special Appeals concluded that, "[a]lthough the Motion for Access was filed in the criminal proceeding, the relief sought was civil in nature and could have been sought in a separate civil action." *Id.* at 149 (internal quotation marks omitted). Consequently, the Court of Special Appeals concluded that "the State's right to appeal in this case was not limited by CJ § 12-302(c)." *Id.*

The State argues that the Circuit Court's orders denying the State's requests under CJ § 9-123 are not governed by CJ § 12-302(c), notwithstanding that they arose from a criminal case, because the request for a grant of immunity bears none of the characteristics of a criminal case as that term is defined in the Courts and Judicial Proceedings Article. *See* CJ § 12-101(e) (defining a criminal case as "a case charging violation of motor vehicle or traffic laws and a case charging violation of a rule or regulation if a criminal penalty may be incurred"). Rather, the State asserts that the witness immunity dispute is an ancillary civil issue, the resolution of which constitutes a final judgment because it does not involve the merits of the State's charges against Defendants in their underlying criminal cases.

We agree. A request made under CJ § 9-123 bears no resemblance to a criminal case, as that term is understood. The CJ § 9-123 motion did not charge Officer Porter with violating any law, rule, or regulation and, other than a finding of contempt, which is governed by another statute in Title 12 of the Courts and Judicial Proceedings Article, there is no criminal penalty that would be imposed upon him for failing to comply with the order. Instead, the motions to compel Officer Porter's testimony are more akin to the collateral replevin and access issues addressed by the Court of Special Appeals in *Strickland* and

19

*WBAL*.  The immunity actions were entirely unrelated to the criminal charges against Defendants, and "[o]nce the motion was denied there was nothing more to be done" with respect to the dispute between Officer Porter and the State.  *See In re Special Investigation No. 231*, 295 Md. at 370.  That the immunity requests arose in the context of Defendants' underlying criminal prosecutions does not transform into a criminal case what is otherwise an ancillary civil issue between the State and a non-party to those prosecutions.

Defendants assert that the "criminal nature of the proceedings" distinguishes this appeal from *Strickland* and *WBAL*.  Unlike in *Strickland*, Defendants reason, there is no property issue and, unlike in *WBAL*, there was no "separate civil action" available to the State.  Defendants' argument assumes the answer to the very question before us.  Defendants accept as given that an appeal from an order regarding a motion to compel immunized testimony is an appeal from a criminal case, a proposition with which we do not agree.  Rather, as we have stated, the Circuit Court's judgment was essentially civil because it was collateral to the merits of the underlying criminal litigation and it resolved all of the disputes between the parties to that collateral issue.

There seems to be no disagreement that the State could appeal from a trial court's denial of a motion made pursuant to CJ § 9-123 in the context of a grand jury proceeding.  Defendants argue, however, that appeals arising from grand jury proceedings are distinguishable from cases in which an underlying criminal proceeding is ongoing.  They reason that CJ § 9-123 identifies both "a criminal prosecution" and "a proceeding before a grand jury," thereby indicating that a prosecution and a grand jury proceeding are different.  We are not persuaded that there is such a material distinction.

20

CJ § 9-123 states that an order will be issued when "an individual has been, or may be, called to testify or provide other information in a criminal prosecution or a proceeding before a grand jury of the State." We agree with the State that this language merely identifies the two circumstances in which the issue of a witness's immunity is likely to arise. CJ § 9-123 does not provide that the two proceedings are substantively different in terms of the State's right of appeal. The statute otherwise applies equally to criminal prosecutions and grand jury proceedings, and in neither circumstance is the court's judgment related to the merits of the State's underlying criminal charges against the criminal defendant.

Defendants further attempt to distinguish this case from our grand jury cases because the orders issued in the latter proceedings "were, in fact, final judgments." We have held, however, that "a trial court discovery or similar order" can constitute an appealable final judgment under CJ § 12-301 when the court's order finally resolves an issue with an individual who is not a party to the underlying litigation. *St. Joseph Med. Ctr., Inc. v. Cardiac Surgery Assocs., P.A.*, 392 Md. 75, 90 (2006). In the case of a ruling adverse to the non-party, we stated that "Maryland law permits the aggrieved appellant to appeal the order because, analytically, it is a final judgment with respect to that appellant." *Id.*

Because the Circuit Court's orders here resolved all of the claims Officer Porter possessed, there is no dispute that his appeal is properly before us in the cases involving Officer Goodson and Sergeant White. We conclude that the State can appeal from the Circuit Court's denial of its motions to compel for the same reason that Officer Porter can

appeal from the rulings in the State's favor.  As we stated in part (a), *supra*, a motion to compel immunized testimony concerns only the State and the witness whose testimony the State seeks to compel.  It follows necessarily that the resolution of the issue of Officer Porter's immunity finally puts to an end the controversy at the trial level between the State and Officer Porter and, consequently, is a final judgment with respect to those two parties.  We hold that an order adjudicating a motion to compel immunized testimony under CJ § 9-123 is an appealable final judgment under CJ § 12-301 and is not limited by CJ § 12-302(c).[6]  For that reason, moreover, we deny Defendants' motion to dismiss the appeal.

IV.

Having concluded that the State possesses the right to appeal the Circuit Court's denial of the motion to compel Officer Porter's testimony in the trials of Lieutenant Rice, Officer Nero, and Officer Miller, we must determine whether CJ § 9-123 affords a trial court any discretion to deny a properly pled motion to compel immunized testimony.

Our effort in interpreting any statute requires us to ascertain the plain meaning of that provision.  *Meyer v. State*, 445 Md. 648, 676 (2015).  If the plain language of the statute is unambiguous, the Court need look no further.  *Gardner v. State*, 420 Md. 1, 8 (2011) ("If the language of the statute is unambiguous and clearly consistent with the statute's apparent purpose, our inquiry as to the legislative intent ends ordinarily and we apply the statute as written without resort to other rules of construction." (quoting *State v.*

---

[6] The State argued alternatively that the Circuit Court's orders were appealable as interlocutory appeals under the collateral order doctrine or under the doctrine of extraordinary writs.  Because we conclude that the orders constituted final judgments under CJ § 12-301, we do not address the State's alternative arguments.

*Johnson*, 415 Md. 413, 421 (2010))). We may, however, consult a statute's legislative history as "a confirmatory process." *Mayor & City Council of Balt. v. Chase*, 360 Md. 121, 131 (2000). Here, we conclude that the plain language of the statute is unambiguous and the legislative history confirms its plain meaning.

The operative language is found in CJ § 9-123(c) and (d). Subsection (c) provides in pertinent part that "the court in which the proceeding is or may be held *shall issue, on the request of the prosecutor* made in accordance with subsection (d) of this section, an order requiring the individual to give testimony or provide other information which the individual has refused to give or provide on the basis of the individual's privilege against self-incrimination." CJ § 9-123(c)(1) (emphasis added). Subsection (d) then instructs that, "[i]f a prosecutor seeks to compel an individual to testify or provide other information, *the prosecutor shall request*, by written motion, the court to issue an order under subsection (c) of this section when the *prosecutor determines*" that the testimony is necessary and otherwise would be refused on self-incrimination grounds. CJ § 9-123(d) (emphasis added).

The State argues that the plain language of CJ § 9-123 vests in the State's Attorney the sole discretion to determine whether it is in the public interest to request immunized testimony and, consequently, the trial court is required to issue an order compelling the testimony once the court determines that the prosecutor made the request in compliance with the statute. Defendants counter that the language in CJ § 9-123 is directory, rather than mandatory, and as a consequence the trial court retains the discretion to deny a properly pled request if the circumstances so require. We agree with the State that CJ § 9-

23

123 unambiguously requires the trial court to grant a motion that complies with the statutory pleading requirements and does not give the court any discretion to substitute its own judgment.

The use of the phrase "shall issue" in subsection (c) makes clear that the court is required to issue an order compelling immunized testimony once the court determines that the request was made in accordance with subsection (d). We have held that the use of the word "shall" is treated as mandatory unless "the context in which it is used indicates otherwise." *Resetar v. State Bd. of Educ.*, 284 Md. 537, 547 (1979) (internal quotation marks omitted); *see Perez v. State*, 420 Md. 57, 63 (2011) (noting that "the word 'shall' indicates the intent that a provision is mandatory" (quoting *Dove v. State*, 415 Md. 727, 738 (2010))).

We do not agree with Defendants that the word "request" in subsection (d) modifies the use of the phrase "shall issue." That the prosecutor must make a "request" to the court merely describes the process the State must undertake to secure the order to compel, rather than the substance of the court's role in issuing the order. Subsection (d) further confirms this interpretation. The "prosecutor determines" whether the testimony is necessary and whether the individual is likely to refuse to testify, and the prosecutor's determination then prompts the court's issuance of the order. There is no language in the statute indicating that the trial court may second guess the prosecutor's determination that the immunized testimony is necessary to the public interest, nor does the statute grant the court the authority to deny the motion if the court believes the request is a pretext for something else.

Absent any other indication that the context requires a different interpretation, we

24

will not depart from our practice of interpreting the word "shall" as mandatory. *See Harrison-Solomon v. State*, 442 Md. 254, 269 (2015); *see also Montgomery County v. Shropshire*, 420 Md. 362, 377 (2011) (concluding that a provision stating that "a custodian shall deny inspection" of certain types of records under the Public Information Act is mandatory); *Grant v. State*, 414 Md. 483, 490 (2010) ("The use of the word 'shall' in [Maryland Rule 4-215(d)] commands mandatory action by a circuit court[.]"); *In re James S.*, 286 Md. 702, 710-13 (1980) (concluding that the use of the word "shall" in CJ § 8-312(b) is mandatory rather than directory).

Defendants suggest that the word "shall" is not mandatory because "the language of the statute provides no penalty for failure to act." *See Md. State Bar Ass'n v. Frank*, 272 Md. 528, 533 (1974). We disagree. We have held that the absence of a penalty is not dispositive of whether the use of the word "shall" is mandatory, *Moss v. Director, Patuxent Institution*, 297 Md. 561, 566 (1977); instead, the inquiry "turns upon the intention of the Legislature as gathered from the nature of the subject matter and the purposes to be accomplished," *Resetar*, 284 Md. at 547 (internal quotation marks omitted). We cannot envision the General Assembly enacting a penalty upon a trial court for a failure to issue a required order. *See People v. Ousley*, 919 N.E.2d 875, 884-85 (Ill. 2009) (concluding that a statute providing that "the court on motion of the State shall order that a witness be granted immunity from prosecution" is mandatory even though the statute did not prescribe a consequence for the trial court's failure to comply with the provision).

Defendants rely upon two out-of-state cases to support their argument that the trial court retains discretion over a motion to compel immunized testimony. *See State v.*

*Mosher*, 461 S.E.2d 219, 220 (Ga. 1995); *In re Rebar Steel Antitrust Investigation*, 343 So. 2d 1377, 1381-82 (La. 1977). These cases are inapposite. The Georgia immunity statute at issue in *Mosher* provided only that the prosecutor "*may* request the superior court in writing to order that person to testify or produce the evidence." 461 S.E.2d at 220 (emphasis added). The statute therefore did not contain the same mandatory "shall" language that is dispositive to our interpretation here. *See id.* The Louisiana immunity statute at issue in *In re Rebar Steel Antitrust Investigation* does contain mandatory language similar to that in CJ § 9-123. *See* 343 So. 2d at 1381 (noting that, under the immunity statute, the court "shall issue" an order compelling testimony "upon the request of the attorney general"). The Louisiana Supreme Court concluded, however, that the State's request to compel immunized testimony did not fall within the immunity statute. *Id.* at 1381-82. The Louisiana Supreme Court noted that the statute defines the court issuing the order as the "judicial district court of the district in which the proceeding is or may be held." *Id.* at 1381. In the case before it, there was no pending proceeding and therefore no "judicial district court of the district in which the proceeding is or may be held." *Id.* at 1382. As a result, the State in that case failed to satisfy the statute's pleading requirements, which is a proper basis for denying a request under our interpretation of our similar immunity statute.

In short, the plain language of CJ § 9-123 places the trial court for the purpose of that statute in a largely ministerial role: once the State's Attorney determines that the witness's testimony is necessary and makes an appropriate request, and the court determines that the statute's pleading requirements have been satisfied, the court is required

26

to issue the order.  *See Ousley*, 919 N.E.2d at 886 (interpreting a statute worded similarly to CJ § 9-123 and concluding that "[t]he trial court's role is limited to examining the motion to determine whether the motion meets the procedural and substantive requirements of the use immunity statute [and] the court's role in considering a motion for use immunity essentially is ministerial").[7]  CJ § 9-123 includes no provision authorizing the court to require a proffer as to the State's Attorney's public interest determination, or to otherwise second guess the State's motive in making the request.  *See Ryan v. Comm'r of Internal Revenue*, 568 F.2d 531, 541 (7th Cir. 1977) ("Since that judgment is entirely a matter for the executive branch, unreviewable by a court, there is no need for the record to contain any facts supporting the decision of the United States Attorney.").  As a result, a trial court lacks discretion to deny a motion to compel immunized testimony that was properly pled.

Having discerned the plain meaning of CJ § 9-123, we may nevertheless refer to its legislative history to confirm our interpretation.  *See Chase*, 360 Md. at 131.  The legislative history of the statute leaves no doubt that the General Assembly intended to vest all discretion in the prosecutor, not the court.  First, the purpose of the statute, as stated in the Session Law in which it was enacted, was described as "*requiring* a court under certain circumstances to issue an order requiring a witness to testify or provide other information *upon request by a prosecutor*."  1989 Md. Laws, ch. 289 (H.B. 1311) (emphasis added).

---

[7] We do not mean to suggest that the court does not have the discretion to determine that the State's Attorney, for example, perpetrated a fraud within the four corners of the motion to compel.  We hold only that the court lacks the discretion to deny a properly pled motion to compel because the court questions the State's Attorney's determination that the testimony is in the public interest.

This language is consistent with the statute's plain meaning—that the General Assembly intended only the prosecutor's exercise of discretion to dictate whether a witness could be compelled to testify.

A Position Paper submitted by the Maryland Office of the Attorney General, which was contained in that legislation's bill file, further reaffirms the judge's limited role in the process.[8] It states, in part:

> By far the most significant changes provided by the proposed statute are procedural. Immunity would no longer be conferred automatically or accidentally, but rather only through court order. To ensure coordinated, responsible requests for immunity, the decision to seek a court order requires approval by the State's Attorney, Attorney General, or State Prosecutor. *The State's Attorney, the Attorney General, or State Prosecutor will thereby have central control and ultimate responsibility for the issuance of grants of immunity.*
>
> *The judicial role under this statute is ministerial.* The judge verifies that:
>
> 1. The State's Attorney, the Attorney General, or State Prosecutor has approved the request for an immunity order;
> 2. The witness has refused or is likely to refuse to testify;
> 3. The prosecutor has determined that the witness's testimony may be necessary to be [in] the public interest.
>
> *Once the judge concludes these three requirements are met, he issues a court order compelling testimony and immunizing the witness.*
>
> *The Judge will not himself determine whether the witness' testimony may be necessary to the public interest.* To do so would transform the Judge into a prosecutor and require him to make delicate prosecutorial judgments [which] are inappropriate.

---

[8] In interpreting Maryland statutes, we on several occasions have consulted position papers submitted to the General Assembly and contained within a statute's bill file, as evidence of legislative intent. *See United States v. Ambrose,* 403 Md. 425, 438 (2008); *In re Adoption No. 12612,* 353 Md. 209, 235 (1999).

Md. Office of the Att'y Gen., *Position Paper for H.B. 1311*, *Witness Immunity*, 1989 Reg. Sess., at 8-9 (1989) (emphasis added).

> The summary of the legislation contained in the Fiscal Note indicates similarly:

> Specifically, if a witness refuses to testify on a criminal matter, on the grounds of privilege against self-incrimination, the Court may compel the witness to testify or provide information by issuing a court order to that effect. The court order would only be granted *upon the written request of the prosecutor, who has found that the testimony or information of a witness may be necessary to the public interest, and that the testimony or information would not be forthcoming absent the order*.

Md. Gen. Assembly Div. of Fiscal Research, *Fiscal Note Revised for H.B. 1311*, 1989 Reg. Sess. (1989) (emphasis added). Defendants rely upon the phrase "may compel" to suggest that the court retains discretion to deny the State's request. That reliance is misplaced. Because the summary indicates that the court grants the order "upon the written request of the prosecutor," it remains that the prosecutor retains the sole exercise of discretion to decide whether the testimony may be necessary to the public interest.

The Position Paper notes that CJ § 9-123 is "based substantially on the federal immunity statutes: 18 U.S.C. §§ 6001-04 (1985)," which similarly grant the executive branch the discretion to decide whether the compelled testimony may be necessary to the public interest. 18 U.S.C. § 6003 (2012) is procedurally identical to § 9-123. It provides:

> (a) In the case of any individual who has been or may be called to testify or provide other information at any proceeding before or ancillary to a court of the United States or a grand jury of the United States, the United States district court for the judicial district in which the proceeding is or may be held *shall issue*, in accordance with subsection (b) of this section, *upon the request of the United States attorney* for such district, *an order requiring such individual to give testimony* or provide other information which he refuses to give or provide on the basis of his privilege against self-incrimination, such order to become effective as provided in section 6002 of

29

this title.

(b) A United States attorney may, with the approval of the Attorney General, the Deputy Attorney General, the Associate Attorney General, or any designated Assistant Attorney General or Deputy Assistant Attorney General, request an order under subsection (a) of this section when *in his judgment*—

> (1) the testimony or other information from such individual may be necessary to the public interest; and
>
> (2) such individual has refused or is likely to refuse to testify or provide other information on the basis of his privilege against self-incrimination.

*Id.* (emphasis added).

The Supreme Court interpreted the predecessor to 18 U.S.C. § 6003, which contained a procedure materially similar to the version codified today, in *Ullmann*.[9]  There, a witness challenged the United States Attorney's application to compel the witness's testimony before a grand jury under a grant of immunity.  350 U.S. at 424-25.  The Supreme Court was asked to decide, among other questions, whether the trial court had the discretion to deny an application for an order compelling a witness's testimony if all of the statutory

---

[9] At the time the opinion was decided, the procedure set forth in the immunity statute read as follows:

> Whenever in the judgment of a United States attorney the testimony of any witness, or the production of books, papers, or other evidence by any witness, in any case or proceeding before any grand jury or court of the United States . . . is necessary to the public interest, he, upon the approval of the Attorney General, shall make application to the court that the witness shall be instructed to testify or produce evidence subject to the provisions of this section, and upon order of the court such witness shall not be excused from testifying or from producing books, papers, or other evidence on the ground that the testimony or evidence required of him may tend to incriminate him or subject him to a penalty or forfeiture.

*Ullmann v. United States*, 350 U.S. 422, 423-24 (1956) (quoting 18 U.S.C. § 3486(c) (Supp. II 1954)).

requirements were met. *Id.* at 426. The Court held that the trial court did not possess such discretion: "A fair reading of [the statute] does not indicate that the district judge has any discretion to deny the order on the ground that the public interest does not warrant it." *Id.* at 432-33.

Since then, every federal court presented with the question has concluded that the trial court lacks the discretion to deny a properly pled motion to compel immunized testimony. *See In re Sealed Case*, 791 F.2d 179, 181 (D.C. Cir. 1986); *In re Grand Jury Investigation*, 657 F.2d 88, 90-91 (6th Cir. 1981); *United States v. Hollinger*, 553 F.2d 535, 548 (7th Cir. 1977); *United States v. Leyva*, 513 F.2d 774, 776 (5th Cir. 1975); *Urasaki v. United States Dist. Ct., Cent. Dist. of Cal.*, 504 F.2d 513, 514 (9th Cir. 1974); *In re Lochiatto*, 497 F.2d 803, 804 n.2 (1st Cir. 1974); *In re Grand Jury Investigation*, 486 F.2d 1013, 1016 (3d Cir. 1973); *In re Kilgo*, 484 F.2d 1215, 1219 (4th Cir. 1973). Our sister states with materially similar immunity statutes are in accord. *See Ousley*, 919 N.E.2d at 886; *In re Tuso*, 376 A.2d 895, 896 (N.J. 1977).

In sum, the plain language of CJ § 9-123 clearly and unambiguously requires a trial court to issue an order in response to a properly pled request to compel immunized testimony. Our assessment of that plain language is confirmed by our reference to the statute's legislative history, which reflects the General Assembly's intent to vest immunity determinations in the executive branch. Our interpretation of CJ § 9-123 also is wholly consistent with the federal courts' and our sister states' interpretation of materially identical statutes. We therefore hold that the trial court is required to grant a motion to compel immunized testimony so long as the motion satisfies the statute's prerequisites.

31

In denying the State's motions to compel Officer Porter's testimony in Defendants' trials, the court did not find that the State failed to satisfy CJ § 9-123's pleading requirements, namely that the State's Attorney determined that the testimony may be necessary to the public interest and that the individual whose testimony the State sought to compel has refused or is likely to refuse to testify on self-incrimination grounds. Rather, the court concluded that the State had a "dual purpose" for its request: to procure Officer Porter's testimony and "to get the postponement that they want." Although the court stated that it was not substituting its judgment for what is in the public interest, the court's written orders provided that the denial was "based upon the Court finding that the State's motion was simply an attempt at subterfuge because [the prosecutors] did not agree with the Court's order to continue with the other trials. *It is this action of the State that this Court found was not in the public interest*." (Emphasis added). The court, in effect, then, did make an independent determination that compelling Officer Porter's testimony was not in the public interest. The court was not empowered to render such a conclusion. *See Ryan*, 568 F.2d at 540 ("The court may only scrutinize the record to ascertain that a request for immunity complies with the procedural and jurisdictional requirements of the statute."). The Circuit Court's written orders further explained that "there should be a two-step process" in deciding whether to grant a CJ § 9-123 motion if "the motives of the requesting party are called into question." The Circuit Court's denial of the State's motions on that basis finds no support in the plain meaning of the statute and was in error. Because the State filed proper motions that satisfied the statutory requirements, the court was obligated to grant the State's requests and was precluded from substituting its own judgment in

32

deciding whether an order should be issued.

Defendants argue that divesting the court of its discretion to grant or deny a motion would violate principles of separation of powers because the court would be acting as a "rubber stamp" for the executive branch. To the contrary, it is Defendants' interpretation that would raise a constitutional question. The Supreme Court laid this issue to rest in *Ullmann*. In rejecting an interpretation of the statute that would grant the trial court discretion to deny an immunity request, the Court indicated that, if a judge's role was more than ministerial, the court would be acting outside of its judicial function. *Ullmann*, 350 U.S. at 433-44. The Court concluded, however, that, "[s]ince the Court's duty under [the immunity statute] is only to ascertain whether the statutory requirements are complied with by the grand jury, the United States Attorney, and the Attorney General, we have no difficulty in concluding that the district court is confined within the scope of 'judicial [p]ower.'" *Id.* at 434 (quoting *Interstate Commerce Comm'n v. Brimson*, 154 U.S. 447, 483-84 (1894)). It is well established that the decision to grant a witness immunity is solely an executive function. *See United States v. Taylor*, 728 F.2d 930, 934 (7th Cir. 1984) ("Congress has delegated the authority to grant use immunity solely to the executive branch of government. . . . Both the exclusive nature of Congress's delegation and the fact that the balancing process is wholly within the expertise of the executive branch foreclose the federal courts from taking more than a ministerial role in prosecutorial immunity decisions that are made properly under 18 U.S.C. § 6003."); *United States v. Herman*, 589 F.2d 1191, 1200 (3d Cir. 1978) (concluding that "district court review of the immunity decision to determine whether it is in the 'public interest' raises grave issues of separation of powers");

33

*Hayes v. United States*, 109 A.3d 1110, 1116 (D.C. 2015) (noting that, in reviewing the government's decision to refuse to grant immunity to a witness, "the trial court must take care to avoid intruding into the exclusively executive function of granting immunity"). For that reason, there is no concern that the prosecutor is usurping a judicial function by retaining the discretion CJ § 9-123 affords to it. *See Shell Oil Co. v. Supervisor of Assessments of Prince George's Cty.*, 276 Md. 36, 47 (1975) (concluding that an attempt to authorize an administrative agency to perform a "purely judicial function or power" violates separation of powers (emphasis omitted)).

Defendants also suggest that the Circuit Court properly denied the State's motions to prevent a violation of their constitutional right to a speedy trial. Defendants note that "courts must discharge their duty to protect constitutional rights" when an action from the executive branch "offends a fundamental constitutional guarantee." (Quoting *Stouffer v. Reid*, 413 Md. 491, 511 (2010)). They therefore rely upon cases providing that the court may play a role in the State's immunity determinations to ensure that prosecutorial power is not exercised in a way that violates a defendant's constitutional rights. *See, e.g., United States v. Hooks*, 848 F.2d 785, 799 (7th Cir. 1988) (concluding that "the prosecutor's power to seek or to refuse to seek immunity is limited by the constitutional right to due process of the law"). The State correctly points out, however, that those cases concerned the prosecutor's *refusal* to grant immunity to a witness and whether that refusal violated the defendant's due process rights. Defendants alert us to no case in which a court has rejected a prosecutor's request to *grant* immunity to a witness. More important, however, as we have explained, denying prophylactically the State's motions to compel is not the

34

appropriate remedy for a future violation of Defendants' right to a speedy trial. It is not the act of compelling Officer Porter's testimony itself that would violate Defendants' rights. Nor was the court's recognition that its order would be appealed, thereby causing a delay in the trials, an adequate basis for denying the motions to compel.

In any event, Defendants' contention is belied by the record. The Circuit Court did not deny the State's motions on the ground that compelling Officer Porter's testimony would violate Defendants' right to a speedy trial. The court stated specifically, both on the record and again in its written order, that the court denied the motions because of its belief that the State's motion was a "subterfuge" for regaining control over the order in which Defendants were tried. At most, the court expressed a "concern" that those rights might be implicated as a result of a stay imposed in the trials. If the court's concern is ultimately realized, Defendants may move to dismiss their indictments. They, however, cannot justify the court's denial of the State's CJ § 9-123 motion on that basis.

In sum, based upon the plain language of CJ § 9-123, confirmed by the legislative history and the federal courts' interpretation of their counterpart immunity statute, the Circuit Court erred in denying the State's motions to compel because those motions were properly requested.

V.

We turn now to the substance of CJ § 9-123 and the protection it affords Officer Porter. Officer Porter lodges several challenges to application of CJ § 9-123 against him. He argues that use and derivative use immunity does not afford him sufficient protection against compelled self-incrimination under the Fifth Amendment because he currently has

35

criminal charges pending against him arising from the same incident about which he will be compelled to testify. Because he is also a defendant, he contends that his constitutional privilege is somehow enhanced and can only be secured through transactional immunity. He also accuses the State of suborning perjury. He relies for this argument on the fact that the prosecutors argued during his trial that portions of his testimony were not credible and therefore compelling his testimony would be "coaxing Porter into committing what the State believes is perjury and an obstruction of justice," which are not protected by the immunity statute. He further alleges that the State cannot compel him, as a matter of constitutional law, to testify because the State has failed to enact appropriate safeguards to ensure that the evidence used against him on retrial is not tainted by his immunized testimony. Even if CJ § 9-123 sufficiently protects his Fifth Amendment right, moreover, Officer Porter contends that compelling his testimony offends Article 22 of the Maryland Declaration of Rights, which he believes offers greater protection than the Fifth Amendment. Not one of these arguments has merit.

*Self-Incrimination under the Fifth Amendment*

The grant of use and derivative use immunity under CJ § 9-123 affords the same protection against compelled self-incrimination as invocation of the privilege itself, and for that reason it is constitutional under the Fifth Amendment. *See Kastigar,* 406 U.S. at 453. That Officer Porter is a defendant in his own trial does not change the fact that he is a witness in the trials of the remaining officers. For purposes of granting immunity that is coextensive with the privilege afforded by the Fifth Amendment, there is no practical distinction. In *Goldberg v. United States*, 472 F.2d 513, 515 (2d Cir. 1973), the Second

36

Circuit rejected the notion that "a person who was already the subject of a criminal complaint for the transaction into which the grand jury was inquiring," could not be constitutionally compelled to testify under a grant of use and derivative use immunity. The Second Circuit found "no basis" for the distinction between a defendant and a witness in this context, reasoning that the word "witness" in the immunity statute "includes a witness before the grand jury, which Goldberg surely is, even if he is also a potential defendant at a later trial." *Id.* We likewise conclude that Officer Porter's status as a defendant in his own trial does not alter the State's ability to compel his testimony in separate trials of other defendants.

Nor are we persuaded by Officer Porter's attempt to distinguish a witness from a defendant on statutory grounds. Officer Porter notes that CJ § 9-123 refers only to a "witness" and not a "defendant," while CJ § 9-107 provides that "[a] person may not be compelled to testify in violation of his privilege against self-incrimination. The failure of a defendant to testify in a criminal proceeding on this basis does not create any presumption against him." This language merely codifies the privilege against compelled self-incrimination and prohibits any negative inference to be drawn from the defendant's decision not to testify. The language does not provide that a defendant may refuse to testify in a separate trial against another defendant under the grant of use and derivative use immunity. Moreover, CJ § 9-107 states only that a defendant may not be required to testify "in violation of his privilege against self-incrimination." Because *Kastigar* instructs that compelling a witness's testimony in exchange for use and derivative use immunity does not violate that privilege, *see* 406 U.S. at 453, the State's exercise of CJ § 9-123 is in line

37

with CJ § 9-107 and comports with the Fifth Amendment.

Officer Porter contends that CJ § 9-123 cannot be applied in a constitutional manner to a witness who is also a defendant facing trial because "[t]here can be no real assurance that a prosecutor, either deliberately or accidentally, will not use information obtained through immunized testimony." That concern is premature. *Kastigar* instructs that the State may not use a defendant's compelled testimony "in *any* respect," and for that reason the State will later bear a "heavy burden" of demonstrating affirmatively that the evidence it seeks to use against Officer Porter was derived wholly independently from the compelled testimony. *See* 406 U.S. at 453, 461. By compelling Officer Porter's testimony under the grant of immunity, it is the State who bears the risk, not Officer Porter. If the State cannot satisfy its substantial burden, the Circuit Court may decide that Officer Porter cannot be retried. Nevertheless, "compelling an individual to testify under immunity does not, in itself, violate a constitutional right" because the violation occurs only when the testimony, or any evidence derived from it, actually is used against the defendant. *Graves v. United States*, 472 A.2d 395, 400 (D.C. 1984). "Before the *Kastigar* hearing, it is not possible to determine whether the government will pursue the prosecution using compelled testimony." *Id.* As a result, any claim regarding what evidence the State may or may not use at Officer Porter's retrial is not ripe until such time as the State attempts to use it. *See id.* To deny the State's attempt to compel immunized testimony on the ground that the testimony might be used in a later prosecution, in effect, would grant Officer Porter transactional immunity. *See id.* at 397, 400 (rejecting the notion that a witness could not be compelled to testify on the ground that it was "simply inconceivable" that the testimony

38

would not be later used against him because "there can be no basis for concluding that a constitutional violation has occurred unless the government actually takes the immunized individual . . . to trial").

Officer Porter claims that he and his counsel will be faced with an "un-navigable minefield" in trying to adduce whether the State is attempting to use at his retrial his testimony or evidence derived from his immunized testimony. Officer Porter's concern, first, impermissibly shifts the burden from the State to Officer Porter and, second, is unfounded precisely because he has already faced trial. The parties and the court therefore have the benefit of a record of the transcript and the evidence that was used against him.

*United States v. Schwimmer*, 882 F.2d 22, 23-24 (2d Cir. 1989), is instructive on this point. In that case, Mr. Schwimmer was convicted and, while his appeal was pending, subpoenaed to testify before a grand jury concerning the subject matter upon which his conviction was based. *Id.* In rejecting the same argument now raised by Officer Porter, the Second Circuit recognized the following:

> In fact, any retrial would itself provide a unique gauge by which the government's compliance with the dictates of *Kastigar* could be measured. That is to say, in the event of reversal on appeal and defendant's retrial, the transcript of the evidence at the first trial would furnish a record against which to compare the government's proof at the second trial. Armed with that record, the trial court could readily determine whether the government had deviated from the proof offered during the first trial and could then require the government to carry its burden of proving that any evidence not presented at the first trial was derived from sources wholly independent of the immunized testimony.

*Id.* at 25.

In this case, if and when Officer Porter is retried, the trial court, at a *Kastigar*

hearing, likewise may refer to the transcript of the evidence the State used against him in his first trial and determine quite easily whether the State seeks to offer evidence different from that which was offered the first time. If so, the State would have to carry its substantial burden of establishing the independent sources from which the evidence was wholly derived. In that respect, Officer Porter's claim that the State has failed to create a "taint team," even if more than speculation, is irrelevant for our purposes. If the State fails to erect sufficient safeguards to ensure that Officer Porter's retrial is not tainted by his immunized testimony, the State will be hard-pressed to carry its heavy burden of proving the legitimacy of any new evidence it seeks to introduce. That this *may* occur, however, does not mean that it is appropriately addressed at the time the State seeks to compel Officer Porter's testimony in another officer's trial. *See Goldberg*, 472 F.2d at 515-16 (concluding that the heavy burden imposed on the State "effectively eliminated any such risk" that the immunized testimony would be used against the witness in the event of a prosecution).

Officer Porter also indicates that CJ § 9-123 does not provide him sufficient protection because the federal government is currently investigating his case. To the extent that Officer Porter is asserting that a State grant of immunity does not preclude the federal government from using his immunized statements in a federal prosecution, he is wrong. *See Murphy v. Waterfront Comm'n of N.Y. Harbor*, 378 U.S. 52, 79 (1964), *abrogated on other grounds by United States v. Balsys*, 524 U.S. 666, 680 (1998) (noting that the portion of *Murphy* that a State grant of immunity applies to a federal prosecution "was undoubtedly correct"). The Supreme Court held long ago that "a state witness may not be compelled to give testimony which may be incriminating under federal law unless the compelled

40

testimony and its fruits cannot be used in any manner by federal officials in connection with a criminal prosecution against him." *Murphy*, 378 U.S. at 79. "Once a defendant demonstrates that he has testified, under a state grant of immunity, to matters related to the federal prosecution, the federal authorities have the burden of showing that their evidence is not tainted by establishing that they had an independent, legitimate source for the disputed evidence." *Id.* at 79 n.18; *see also State v. Bond*, 361 P.3d 104, 112 (Utah 2015) (concluding that, "if a State compels an individual to testify through a grant of immunity, the federal government is prohibited from then using that testimony or its fruits against the witness in a federal prosecution" (citing *Murphy*, 378 U.S. at 79)). We reject Officer Porter's suggestion that *Murphy* does not protect him because it "is more than half a century old."

We further reject the notion that the State would be suborning perjury by compelling Officer Porter to testify under a grant of immunity. That the State believed portions of Officer Porter's trial testimony were not credible does not lead automatically to the conclusion that the State's grant of immunity is a "farce" designed to "lay a foundation" for Officer Porter's commission of perjury. Under the grant of immunity, the State has no reason to expect that Officer Porter will commit perjury because it is in his best interest to testify truthfully. *See In re Grand Jury Proceedings*, 644 F.2d 348, 351 (5th Cir. 1981) (per curiam) (providing that the immunity statute is designed "to force [a witness] to tell the truth"). The State informed the Circuit Court that the testimony it sought to elicit from Officer Porter did not concern the same subject matter to which the State believed Officer Porter previously testified untruthfully. We likewise have been assured

41

that "[t]he State has no intention of soliciting that testimony 'as true.'" Although "a conviction obtained through the use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment," *Napue v. Illinois*, 360 U.S. 264, 269 (1959), we do not agree with Officer Porter that this is the State's objective. Even if, moreover, the State purposefully introduced Officer Porter's testimony, knowing or believing it to be false, Officer Porter lacks standing to challenge the State's action. Any attempt by the State to introduce false testimony would violate Officer Goodson's and Sergeant White's constitutional rights (and those of Defendants as well), not Officer Porter's. "For the prosecution to offer testimony into evidence, knowing it or believing it to be false is a violation of *the defendant's* due process rights[.]" *United States v. Mills*, 704 F.2d 1553, 1565 (11th Cir. 1983) (emphasis added). And, as with Officer Porter's other arguments, this contention is premature because the State has not yet offered testimony previously labeled as not credible.

If, however, Officer Porter does testify falsely during the trial of one or more of the other officers, the Fifth Amendment will not protect him, and the State is constitutionally permitted to charge him with perjury. *See United States v. Apfelbaum*, 445 U.S. 115, 127 (1980). "[T]he Fifth Amendment privilege against compulsory self-incrimination provides no protection for the commission of perjury." *Id.* That Officer Porter believes the State will later charge him with perjury is not a permissible basis for denying a motion to compel his immunized testimony. *See Earp v. Cullen*, 623 F.3d 1065, 1070 (9th Cir. 2010) ("There is 'no doctrine of anticipatory perjury,' and a 'future intention to commit perjury' does not create a sufficient hazard of self-incrimination to implicate the Fifth Amendment

42

privilege." (quoting *Apfelbaum*, 445 U.S. at 131)).

To be clear, Officer Porter's immunized testimony is "inadmissible in all prosecutions for offenses committed prior to the grant of immunity." *Apfelbaum*, 445 U.S. at 128. The exception for perjury in the immunity statute "refers to future perjury, future false statements or future failure to comply with the immunity order, rather than previous acts." *United States v. Watkins*, 505 F.2d 545, 546 (7th Cir. 1974) (per curiam). The State therefore may not use Officer Porter's trial testimony—given prior to the grant of immunity—in any case charging Officer Porter with perjury. *United States v. Cintolo*, 818 F.2d 980, 988 n.5 (1st Cir. 1987) ("The law is settled that a grant of immunity precludes the use of immunized testimony in a prosecution for *past* perjury (though affording no protection against *future* perjury)."). The immunity statute "is not a license to commit perjury . . . but is a direction [to] tell the truth. If telling the truth creates inconsistency with [Officer Porter's] prior testimony at his criminal trial, the prior testimony is not admissible" in any criminal prosecution for perjury. *Greentree*, 644 F.2d at 350-51.

Officer Porter claims that the State will charge him with perjury regardless of whether his immunized testimony is consistent with his trial testimony. To the extent that Officer Porter is asserting that his trial testimony will be used against him as evidence of perjury in giving his immunized testimony, or vice versa, that contention is legally incorrect. If the State seeks to charge Officer Porter with perjury for statements he made during his trial, the State cannot use Officer Porter's immunized testimony to do so. *See United States v. Patrick*, 542 F.2d 381, 385 (7th Cir. 1976) (noting that immunized testimony could not be used to establish that the defendant perjured himself in an earlier

43

prosecution). Nor may the State use his trial testimony to prove that his immunized testimony was false. *Greentree*, 644 F.2d at 350 (noting that the defendant's "prior statements could not be used as prior inconsistent statements to prove perjury in the [immunized] testimony before the grand jury"). Further, if Officer Porter's immunized testimony is inconsistent with his trial testimony, the State cannot use that inconsistency to prove that Officer Porter committed perjury. *Kronick v. United States*, 343 F.2d 436, 441 (9th Cir. 1965) (noting that the State will be precluded "from relying upon any contradiction which may appear as between [the witness's] new testimony and his past testimony").

If, however, his immunized testimony is false, then the State may charge Officer Porter with perjury under CJ § 9-123 without violating his constitutional privilege against compulsory self-incrimination. *See Apfelbaum*, 445 U.S. at 131 (concluding that "neither the immunity statute nor the Fifth Amendment precludes the use of respondent's immunized testimony at a subsequent prosecution for making false statements, so long as that testimony conforms to otherwise applicable rules of evidence"); *United States v. Seltzer*, 794 F.2d 1114, 1120 (6th Cir. 1986) (authorizing the government to use immunized testimony given by the defendant in 1981 at a trial for perjury committed in 1983 because the Fifth Amendment and the immunity statute do not protect the defendant against prosecution for false testimony provided after the grant of immunity). Officer Porter's "immunized testimony may be used to establish the fact that he committed perjury in the giving of such testimony." *Patrick*, 542 F.2d at 385. We disagree with Officer Porter's contention that he will not be placed in the same position as if he had invoked the privilege.

44

The Supreme Court has instructed that it is "analytically incorrect to equate the benefits of remaining silent as a result of invocation of the Fifth Amendment privilege with the protections conferred by the privilege." *See Apfelbaum*, 445 U.S. at 127. "For a grant of immunity to provide protection 'coextensive' with that of the Fifth Amendment, it need not treat the witness as if he had remained silent. Such a conclusion . . . is belied by the fact that immunity statutes and prosecutions for perjury committed during the course of immunized testimony are permissible at all." *Id.*

Officer Porter also argues that CJ § 9-123 does not sufficiently protect him from compelled self-incrimination because the State cannot control what questions the officers' counsel will ask him on cross-examination. This concern reflects a misunderstanding of the scope of Officer Porter's Fifth Amendment privilege. If his answers to counsel's questions on cross-examination are not truthful, a subsequent prosecution for perjury as a result of those false responses does not violate the Fifth Amendment. *See Apfelbaum*, 445 U.S. at 126 (noting that "we ourselves have repeatedly held that perjury prosecutions are permissible for false answers to questions following the grant of immunity"). More to the point, the concern still remains premature until Officer Porter's retrial. *See In re Contempt of Steelman*, 648 N.E.2d 366, 370 (Ind. Ct. App. 1995) (rejecting the argument that use and derivative use immunity was not coextensive with the privilege on the ground that "a person granted immunity is subject to direct examination and cross-examination without the protection of counsel" because that argument "is premature and disregards the protections afforded a witness who testifies under a grant of immunity"). In any event, the possibility that Officer Porter perjures himself on cross-examination does not equate to the

State suborning perjury, and it does not support a denial of the State's request to compel his testimony. Consequently, compelling Officer Porter's testimony does not violate his privilege against compulsory self-incrimination guaranteed by the Fifth Amendment.

*Self-Incrimination under Article 22 of the Maryland Declaration of Rights*

We hold finally that compelling Officer Porter's testimony under use and derivative use immunity does not violate his self-incrimination privilege under Article 22 of the Maryland Declaration of Rights. We generally have interpreted Article 22 as *in pari materia* with the Fifth Amendment. *Marshall v. State*, 415 Md. 248, 259 (2010). Yet, we also have recognized that, under certain circumstances, our State constitutional privilege is "more comprehensive than that of the federal government." *Crosby v. State*, 366 Md. 518, 527 n.8 (2001). On a few occasions, we have construed Article 22 to provide broader protections than its federal counterpart. *Choi v. State*, 316 Md. 529, 535 n.3 (1989) (recognizing that only in a couple of situations has Article 22 "been viewed differently, and more broadly, than the privilege under the Fifth Amendment"). In those cases, we granted broader protections to a defendant in terms of when the privilege may be waived, *Hardaway v. State*, 317 Md. 160, 164-68 (1989); *Chesapeake Club v. State*, 63 Md. 446, 456-57 (1885), self-incrimination by physical, rather than testimonial, evidence, *Allen v. State*, 183 Md. 603, 613 (1944),[10] and a prosecutor's ability to comment on a defendant's decision not to testify, *Marshall*, 415 Md. at 263-64.

---

[10] We have also recognized, however, "the limited scope of the *Allen* ruling." *Choi v. State*, 316 Md. 529, 536 n.3 (1989); *see also Williams v. State*, 231 Md. 83, 86-87 (1963) (concluding that *Allen*, "if correctly decided, has been confined to its particular facts").

With respect to when a witness is entitled to invoke the privilege in lieu of speaking, however, we have held uniformly that Article 22 and the Fifth Amendment are *in pari materia*. *Adkins v. State*, 316 Md. 1, 6 n.5 (1989); *Ellison v. State*, 310 Md. 244, 259 n.4 (1987) (clarifying that "we perceive no difference between Art. 22 of the Declaration of Rights and the Fifth Amendment's Self-Incrimination Clause"); *Lodowski v. State*, 307 Md. 233, 247 (1986) (noting that this Court had not "indicate[d] that the protections afforded an accused by Article 22 were any greater or different than the rights guaranteed by the Fifth Amendment"); *Richardson v. State*, 285 Md. 261, 265 (1979). Indeed, in *In re Criminal Investigation No. 1-162*, a case involving a witness whose testimony the State sought to compel under a grant of immunity, we stated, with respect to the "privilege against compulsory self-incrimination," that "Article 22 provides protection identical to that provided by the fifth amendment privilege." 307 Md. at 683 n.3. Similarly, in *Brown v. State*, 233 Md. 288, 292 (1964), a witness refused to provide immunized testimony under Article 27, § 23 (1957),[11] on the ground that the immunity conferred by that statute was "not broad enough to 'abridge' the privilege against self-incrimination contained in Article

---

[11] That statute, at the time, provided in bribery actions that:

> any person so bribing or attempting to bribe or so demanding or receiving a bribe shall be a competent witness, and compellable to testify against any person or persons who may have committed any of the aforesaid offenses; provided, that any person so compelled to testify in behalf of the State in any such case shall be exempt from prosecution, trial and punishment for any such crime of which such person so testifying may have been guilty or a participant therein, and about which he was so compelled to testify.

Article 27, § 23 (1957).

47

22 of the Declaration of Rights." We concluded, however, that "Article 22 is in *pari materia* with the provisions of the Fifth Amendment to the Federal Constitution against self-incrimination, and it should, we think, receive a like construction." *Id.* at 296. As a result, we held that the immunity statute granted sufficient protection under Article 22. *Id.* at 297-98. We shall do so likewise here with respect to CJ § 9-123.

Officer Porter suggests that Article 22 is broader than the Fifth Amendment because it protects a defendant from producing incriminating *evidence* rather than merely *testimony*. *Compare* U.S. Const. amend. V ("No person . . . shall be compelled in any criminal case to *be a witness* against himself[.]") (emphasis added), *with* Md. Decl. of Rts. art. 22 ("That no man ought to be compelled to give *evidence* against himself in a criminal case.") (emphasis added). We need not decide whether that is so, however, because that distinction has no application to compelled immunized testimony under CJ § 9-123. The State here requested to compel Officer Porter's testimony, not to compel Officer Porter potentially to incriminate himself through the use of other evidence. Even still, CJ § 9-123 provides that "[n]o testimony or *other information* compelled under the order, and no information directly or indirectly derived from the testimony or other information, may be used against the witness in any criminal case[.]" (Emphasis added). As a result, CJ § 9-123 encompasses both testimony and other evidence, and consequently would satisfy even a broader interpretation of "evidence" under Article 22. We therefore see no basis for interpreting Article 22 to afford more protection than that already guaranteed to Officer Porter by the Fifth Amendment. As a result, because the State may compel Officer Porter to testify in the trials of his fellow officers without violating the Fifth Amendment, the

48

State equally may compel Officer Porter's testimony under Article 22 of the Maryland Declaration of Rights.

## VI.

To summarize, we hold that Officer Porter is the proper party to the State's appeal because he, not the defendants in the underlying trials, is the party interested in the subject matter of the State's motion to compel the witness's immunized testimony. Accordingly, we hold that, because a motion to compel immunized testimony concerns only the State and the witness whose testimony is sought, the denial of the State's motion constitutes a final appealable order. We further hold that a trial court is required to grant a motion to compel immunized testimony that complies with the statutory pleading requirements; consequently, the court lacks the discretion to question the State's Attorney's public interest determination. Finally, we hold that compelling Officer Porter's testimony in exchange for use and derivative use immunity is coextensive with the scope of his Fifth Amendment privilege against compelled self-incrimination, as well as that privilege also guaranteed by Article 22 of the Maryland Declaration of Rights. For these reasons, we entered Per Curiam Orders on March 8, 2016, affirming the judgments of the Circuit Court in the cases of Officer Goodson and Sergeant White and reversing the judgments of the Circuit Court in those of Lieutenant Rice, Officer Nero, and Officer Miller.