# ZONING AND PLANNING

**STATUTORY CONSTRUCTION – BOARDS OF APPEALS – WHETHER ALTERNATE MEMBERS OF BOARDS OF APPEALS UNDER § 4-302 OF THE LAND USE ARTICLE MUST HAVE THREE-YEAR TERMS – WHETHER A LOCALITY IS REQUIRED TO DESIGNATE AN ALTERNATE MEMBER.**

August 23, 2018

*The Honorable Bridget Donnell Newton*
*Mayor, City of Rockville*

On behalf of the City of Rockville, you have asked for our opinion on two questions concerning alternate members of local zoning boards of appeals under § 4-302 of the Land Use Article. That section provides that a local board of appeals must consist of "at least three members" appointed by "the local executive and confirmed by the legislative body," Md. Code Ann., Land Use ("LU") § 4-302(a), (b) (2012 & 2017 Supp.), and that the "legislative body shall designate one or more alternate members for the board of appeals who may sit on the board when another member of the board is absent or recused." LU § 4-302(f)(1). The term for a "member of a board of appeals is 3 years," but the statute does not explicitly provide that this three-year term applies to a board's alternate members. Your questions are:

1. May the Mayor and Council appoint an alternate member of the board of appeals for a one-year term?

2. Does the law require the Mayor and Council to appoint an alternate member?

In our opinion, the term of an alternate member of a board of appeals is the same as that of a regular member—three years—and therefore a locality may not designate an alternate member to serve for a one-year term. We further conclude that the statute requires legislative bodies to designate an alternate member; that is to say, it is the legislative body's duty to do so, not simply a matter of discretion.[1]

---

[1] In keeping with our procedures for addressing an opinion request from a local government, you provided the City Attorney's analysis of these questions. The City Attorney advised that the term for the designated alternate member should be the same as that for the appointed members because the statute does not provide for any other length of

3

# I

# Background

## A. Statutory Background

The Land Use Article requires that Maryland municipalities and certain counties "shall provide for the appointment of a board of appeals." LU § 4-301(a).[2] Boards of appeals exist to "hear and decide appeals" on zoning matters within the local jurisdiction as well as, in some cases, to render decisions on special exceptions and variances from local zoning laws. LU § 4-305. As for the membership of a board of appeals, § 4-302 provides in relevant part:

> (a) A board of appeals consists of at least three members.
>
> (b) A member of a board of appeals shall be appointed by the local executive and confirmed by the legislative body.
>
> (c) The term of office of a member of a board of appeals is 3 years.
>
> * * *
>
> (e) The appointing authority shall appoint a new member to fill the unexpired term of any member who leaves a board of appeals.
>
> (f) (1) A legislative body shall designate one or more alternate members for the board of appeals who may

---

term. She further advised that, although the term "shall" usually creates a duty to comply with a statutory provision, the absence of any penalty for failure to designate an alternate member means that the Mayor and Council are not required to designate an alternate member. As we explain below, we agree with the City Attorney's conclusion on the former question but disagree with her latter conclusion. We find instead that the statute imposes a duty on legislative bodies to designate an alternate member to the board of appeals.

[2] Charter counties and some code counties are not subject to these provisions and instead are governed by separate provisions in Title 10 of the Local Government Article. *See* LU §§ 1-401, 1-402; *see also* Md. Code Ann., Local Gov't §§ 10-305, 10-324 (2013 Repl. Vol.). This opinion interprets LU § 4-302 and therefore does not decide any issues related to those counties governed by other provisions.

sit on the board when another member of the board is absent or recused.

(2) When an alternate member is absent or recused, the legislative body may designate a temporary alternate.

LU § 4-302.

The Rockville City Code provides that the Mayor appoints three members and one alternate member to the board of appeals, and the City Council confirms them. Rockville City Code § 25.04.03.c (2018).[3] The City Code expressly sets the term for "member[s]" as three years. *Id.*

## B. *Legislative History*

The statute that is now § 4-302 of the Land Use Article was first enacted in 1927, when the General Assembly granted zoning authority to Baltimore City and to those municipalities that

---

[3] In contrast to § 4-302 of the Land Use Article, the City Code provides for the appointment of alternate members through the same process of mayoral nomination and council confirmation that applies to regular members, rather than leaving the designation of alternate members solely to the City Council. However, because the Mayor of Rockville is a member of the Council, *see* Charter of the City of Rockville, Art. II, there may not be much practical difference between those two methods of selection, and we need not decide here whether the City Code provision should be amended to change the designation process. Section 4-302 was apparently based on an underlying assumption that the executive authority and legislative authority of a municipality always reside in separate offices. Thus, the statutory scheme overlooks the fact that some municipalities have a single governing body that holds all of the authority of the municipality. In fact, as Rockville's charter demonstrates, the mayor-and-council form of municipal government often does not separate the executive and legislative functions; the mayor acts as a member of the council. *See* 73 *Opinions of the Attorney General* 264, 267-68 (1988) (noting that Ocean City's Council holds all of the legislative and executive powers, except for a mayoral veto); *see also* Charter of the City of Rockville, Art. I and II (body corporate is "The Mayor and Council of Rockville," and the legislative powers of the City are vested in a council that consists of "a Mayor and four Councilmembers"). Although the statute does not recognize this distinction between differing forms of municipal government, *see* LU § 1-101(g)(2), the distinction does not affect our analysis.

contained more than 10,000 inhabitants. *See* 1927 Md. Laws, ch. 705 (codified in Article 66B § 1). As enacted, that law authorized the local legislative body of one of those municipalities to appoint a board of appeals consisting of five members, each of whom would serve a four-year term. 1927 Md. Laws, ch. 705 at 1610 (codified in Article 66B § 7). Several years later, Article 66B eliminated the minimum-inhabitant threshold, thus extending zoning authority to all municipalities. 1933 Md. Laws, ch. 599 at 1332 (codified in Article 66B § 21). This amended statute provided for three members on the board of appeals, each serving three-year terms, to be appointed by the mayor of the locality and confirmed by the council. *Id.* at 1334 (codified in Article 66B § 22).

As relevant here, the provision for an alternate member to sit on the board of appeals first appeared in 1963:

> The Council shall designate one alternate member for the Board of Appeals who may be empowered to sit on the Board in the absence of any member of the Board; and when the alternate is absent, the Council may designate a temporary alternate.

1963 Md. Laws, ch. 556 at 1221 (codified in Article 66B § 22). Under the new law, instead of the two-step process of appointment and confirmation that applied to permanent members, the council alone was given the power to "designate" the alternate member and, when the alternate member was unavailable, a temporary alternate. The law did not specify any consequence for failing to designate an alternate, nor did it contain any new provision specifically addressing the alternate member's term of service.

Since 1963, the General Assembly has undertaken two comprehensive revisions of Article 66B and also made additional changes to the statute. The first comprehensive revision occurred in 1970, in response to the recommendations of a study commission created by the General Assembly to examine the State's planning and zoning laws. *See* Final Report, Maryland Planning and Zoning Law Study Comm'n (Dec. 1969). Among other changes, the bill added a definition for "local executive" that included the "County Executive or Executive Head, Mayor, or similar term." 1970 Md. Laws, ch. 672 at 1881 (codified in Article 66B §1.00). The bill also replaced references to the "Council" with the "local legislative body." *Id.* at 1902. These changes clarified that, regardless of the differing forms of local government, the local executive would appoint the permanent board members and the local legislative body would confirm the appointment. The 1970 revision did not

alter the method for designating the alternate member; rather, that authority remained with the legislative body. *Id*. at 1903.

Before the next comprehensive revision of the statutory scheme, the General Assembly made other changes to what is now § 4-302. As relevant here, in 1994, the provisions concerning the alternate member of the board were moved to a paragraph separate from the one addressing the temporary alternate. *See* 1994 Md. Laws, ch. 54 at 1090 (codified in Article 66B § 4.07(b)).[4] Then, in 2009, the General Assembly created a training requirement for board members. *See* 2009 Md. Laws, ch. 180 (codified in Article 66B § 3.02; now codified in LU § 1-206). Under that requirement, members must complete an education course on various zoning topics within six months of their appointment to the board. LU § 1-206(b).

The second comprehensive revision of the planning and zoning laws occurred in 2012, based on the work of the Land Use Article Review Committee of the Department of Legislative Services. The Committee's goal in creating the Land Use Article was to modernize and clarify the applicable land use provisions, without making substantive changes to the law. *See* 99 *Opinions of the Attorney General* 152, 160 (2014) (citing *Summary Report on Chapter 426 of the Acts of 2012, Land Use Article* at 1). The 2012 enactment of the Land Use Article, therefore, incorporated provisions of the former Article 66B and former Article 28 into one volume "without substantial change," and renumbered the sections. *See* 2012 Md. Laws, ch. 426. As a result, the provision governing the membership of the board of appeals changed from § 4.07 of former Article 66B to § 4-302 of the new Land Use Article.

Finally, one further change to the statute stemmed from a Revisor's Note to the 2012 enactment. That note suggested that, although the language of the newly enacted § 4-302 was derived without substantial change from § 4.07 of former Article 66B, the General Assembly might want to consider a substantive change regarding the "permanent" alternate members:

> [O]nly one "permanent" alternate member is authorized, although there is no explicit limit

---

[4] In 2000, the phrase "be empowered to" sit on the board of appeals was removed from the statute, and the Legislature substituted the current language stating that an alternate member "may sit" on the board when another member is absent or recused. 2000 Md. Laws, ch. 426 at 2331.

> on the number of temporary alternate members who may be appointed. Because members of boards of appeals must complete an education course under § 1-206 of this article, the General Assembly may wish to authorize a legislative body to appoint more than one "permanent" alternate member in order to ensure that an adequate number of participating members are available in case of multiple recusals without requiring training of temporary alternate members who may not otherwise be needed.

2012 Md. Laws, ch. 426 at 2252. Following this recommendation, the General Assembly amended § 4-302 in 2013 to authorize a local legislative body to designate one "or more" alternate members to the board of appeals. 2013 Md. Laws, ch. 674 at 5682.

## II

## Analysis

Your questions require us to construe § 4-302 of the Land Use Article as it pertains to alternate members of boards of appeals. "The cardinal rule of statutory construction is to ascertain and effectuate the intent of the General Assembly." *Bellard v. State*, 452 Md. 467, 481 (2017) (quoting *Wagner v. State*, 445 Md. 404, 417 (2015)). To do so, "we look first to the language of the statute, giving it its natural and ordinary meaning," and "[w]hen the statutory language is clear, we need not look beyond the statutory language to determine the General Assembly's intent." *Id.* However, if the legislative intent cannot be readily discerned from the statutory language itself, "we may, and often must, resort to other recognized indicia." *Id.* Those indicia include, among other things, the broader statutory structure, the legislative history, the purpose behind the statute, and "the relative rationality and legal effect of various competing constructions." *Id.* at 482.

### A. Whether an Alternate Board Member May Be Designated for a One-Year Term

Your first question is whether alternate members of boards of appeals, like regular members of the board, have a fixed three-year term, or whether a local legislative body may instead designate an alternate member for a shorter, one-year term. To answer your question, we start with the statutory language. *See Bellard*, 452 Md. at 481. Here, the text of the statute provides that "[t]he term

of office of a member of a board of appeals is 3 years." LU § 4-302(c). Although the statute does not expressly state that this three-year term applies to alternate members, the use of the word "member" suggests that the same three-year term should apply to "alternate members," because they too are "members" of the board. Indeed, the statute itself specifically refers to alternate members as "members." *See* LU § 4-302(f)(1) ("A legislative body shall designate one or more alternate *members* . . . who may sit on the board when *another member* of the board is absent or recused." (emphasis added)).

That said, read in context, the order in which the provisions appear in the statute creates at least some ambiguity as to whether the General Assembly intended the three-year-term in § 4-302(c) to apply to alternate members. *See, e.g., Kaczorowski v. Mayor and City Council of Baltimore*, 309 Md. 505, 514 (1987) (explaining that the plain language of a statute must always be read in light of "the context in which it appears" (citing *Guardian Life Ins. Co. of America v. Insurance Comm'r of State of Md.*, 293 Md. 629, 642 (1982))). Because § 4-302(c) is located immediately after the subsections of the statute that govern the regular members of the board—but well before the subsection that governs the board's alternate members—a court might read § 4-302(c) as applying only to the regular members, not the alternate members.

Given this ambiguity, we cannot rely solely upon the statute's plain language. Instead, we must also consider the broader statutory context and "seek to reconcile and harmonize the parts of [the] statute, to the extent possible consistent with the statute's object and scope." *Lockett v. Blue Ocean Bristol, LLC*, 446 Md. 397, 422 (2016) (quoting *Lockshin v. Semsker*, 412 Md. 257, 276 (2010)). In our view, both the context of the statute and the purposes behind the statute confirm that the three-year term in § 4-302(c) is supposed to apply to alternate members of the board.

Turning first to context, we note that the statute distinguishes between an "alternate member," who is expressly referred to as a member, and a "temporary alternate," who is not. LU § 4-302(f)(2). Alternate members and temporary alternates also have different roles on the board. Whereas an alternate member "may sit on the board when another member of the board is absent or recused," LU § 4-302(f)(1), a temporary alternate may be designated only "[w]hen an alternate member is absent or recused," LU § 4-302(f)(2). Consistent with these differing roles, the statute specifically labels temporary alternates as "temporary"—a

difference that is meaningful only if the tenure of an alternate member is *not* temporary but fixed. *See, e.g.*, *Gillespie v. State*, 370 Md. 219, 222 (2002) ("We interpret statutes to give every word effect, avoiding constructions that render any portion of the language superfluous or redundant."); *see also* Revisor's Note to 2012 Md. Laws, ch. 426 at 2252 (characterizing alternate members of a board of appeals as "permanent" in juxtaposition to temporary alternates).

Based on these context clues, which indicate that an alternate member's term is fixed, the most natural reading of the statute is that alternate members are governed by the only fixed term provided for in the statute, namely, the three-year term in § 4-302(c). Although in theory the General Assembly could have granted localities the discretion to create longer or shorter terms of their own choosing for alternate members, we suspect that the Legislature—if it had intended that approach—would have done so more expressly. After all, if a locality had the discretion to fix its own terms, it could presumably create a term of 6 months or one of 10 years, neither of which seems consistent with having regular members who serve three-year terms.

This conclusion finds further support from another statute in the Land Use Article. That statute, which establishes Cecil County's board of zoning appeals, is structured in such a way as to make clear that the three-year term for members applies to both regular and alternate members:

> (a) Notwithstanding § 4-302 of this article, the board of appeals consists of five regular members and one alternate member.
>
> (b)(1) The term of a member of the board of appeals is 3 years.

LU § 9-704(a), (b).[5]

---

[5]  Indeed, Cecil County's ordinance governing its board of appeals explicitly reflects this reading of the statute:

> Pursuant to [LU § 9-704], a Board of Appeals is hereby established, which shall consist of five (5) members to be appointed by the County Executive and be approved by the County Council. The County Executive shall designate one (1) alternate member for the Board of Appeals

Given that the General Assembly intended that the same three-year term would govern both regular and alternate members of Cecil County's board of appeals, we think it likely the Legislature intended that regular and alternate members would have the same term under § 4-302 as well. *See, e.g.*, *Sullivan v. Stroop*, 496 U.S. 478, 489 (1990) (explaining that "identical words in two related statutes . . . are intended to have the same meaning"). Although one might argue that the Legislature "knew how" to structure the statute to make clear that alternate members had the same term as regular members and consciously "chose not to" do so here, *e.g.*, *Willis v. Montgomery County*, 415 Md. 523, 547 n.13 (2010), we see no obvious reason why the General Assembly would have intended a different result for Cecil County's board of appeals than for those boards of appeals established under § 4-302.[6] Thus, applying the three-year term to alternate members under § 4-302 is more consistent with the broader statutory context.

Similarly, turning to the purpose of the statute, we conclude that a three-year term for alternate members is more consistent with the statutory purpose for creating an alternate member. *See, e.g.*, *Manger v. Fraternal Order of Police, Mont. County Lodge 35, Inc.*, 227 Md. App. 141, 147 (2016) ("Legislative purpose, gleaned either from the text or from external sources, informs our reading of the statute."). The purpose of having an alternate member is to enable the board to perform its work in the event that a regular

---

. . . . Each member, *including the alternate*, shall serve three (3) year terms."

Cecil County Zoning Ord., Art. XVI, Part II, sec. 298 (2011) (emphasis added and formatting altered).

[6] Moreover, in a host of other contexts, the Legislature has suggested, either through express statutory language or by implication, that alternate members of boards or commissions have the same terms as regular members. *See, e.g.*, Md. Code Ann., Elec. Law § 2-201 (county boards of elections); Md. Code Ann., Tax-Prop. § 3-103 (property tax assessment appeal boards); Md. Code Ann., Alcoholic Bev. § 14-202 (Calvert County board of license commissioners); Md. Code Ann., Envir. § 5-304 (Commission on the Potomac River Basin). Indeed, although we have found other statutes that have the same ambiguity as LU § 4-302, we have not found a single instance in which the Legislature explicitly provided that alternate members have a different term than regular members. This suggests to us that, at least generally speaking, when the Legislature creates alternate or substitute members for boards and commissions, it intends the alternate members to have terms of the same length as the regular members.

member "is absent or recused." LU § 4-302(f)(1). Requiring the same three-year term for alternate members as for regular members promotes this purpose by increasing the probability that an experienced alternate will be available to stand in as a substitute on short notice.

Finally, a three-year term for alternate members better accords with the training regime created by the General Assembly. Under § 1-206(b) of the Land Use Article, board members must complete an education course on zoning and other land use matters, and the legislative history of LU § 4-302 demonstrates the importance of this training requirement as applied to alternate members. In light of that statutory training requirement, the Revisor's Note for the 2012 revisions to § 4-302 recommended that the General Assembly authorize "more than one 'permanent' alternate member in order to ensure that an adequate number of participating members are available in case of multiple recusals without requiring training of temporary alternate members who may not otherwise be needed." 2012 Md. Laws, ch. 426 at 2252. The General Assembly then amended § 4-302 to provide for one "or more" alternate members. 2013 Md. Laws, ch. 674 at 5682. As the Revisor's Note indicates, an alternate member has a permanence that a temporary alternate lacks, and it is therefore important to have trained "alternate members" at the ready to substitute for regular members. A three-year term for alternative members, as opposed to a one-year term, promotes this vision of judicious training by increasing the return on educational investment in an alternate member.

In sum, we conclude that the three-year term in § 4-302(c) applies to both regular members and alternate members of the board. The statute does not provide for any other term, and applying that term to alternate members is consistent with the language of the statute, with an alternate member's status as a "member" of the board, with the statutory context, and with the statutory purpose.

### B. *Whether the Mayor and Council Must Designate at Least One Alternate Board Member*

Turning to your second question, we address whether § 4-302 of the Land Use Article requires a legislative body to designate at least one alternate member, or whether the decision to have an alternate member is left to the locality's discretion. We again begin our analysis with the statutory language. The statute at issue here states that "[a] legislative body *shall* designate one or more alternate members for the board of appeals," LU § 4-302(f)(1)

(emphasis added), and use of the word "shall" in a statute is generally understood to impose a requirement, not to permit the exercise of discretion. *See, e.g., Prince George's County v. Vieira*, 340 Md. 651, 660 (1995) (explaining that "shall" is ordinarily "regarded as a direct indication that the Legislature directed that certain conduct is required" (emphasis omitted)); *Foy v. Baltimore City Det. Ctr.,* 235 Md. App. 37, 60-61 (2017) ("[O]rdinarily, the word 'shall,' unless the context within which it is used indicates otherwise . . . denotes an imperative obligation inconsistent with the idea of discretion." (quoting *Bright v. Unsatisfied Claim and Judgment Fund Board*, 275 Md. 165, 169 (1975))); *Columbia Rd. Citizens' Ass'n v. Montgomery County,* 98 Md. App. 695, 700-01 (1994) ("The word 'shall' in a statute is presumed . . . [to] denot[e] an imperative obligation inconsistent with the exercise of discretion." (internal quotation marks and citation omitted)); *see also Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969, 1977 (2016) ("Unlike the word 'may,' which implies discretion, the word 'shall' usually connotes a requirement.").

Although this presumption may sometimes be overcome by the statutory context, "nothing in the context" of this statute indicates that the word should be read in anything other than its ordinary sense as imposing a requirement. *See Lamone v. Lewin*, __ Md. __, No. 85, Sept. Term 2017, 2018 WL 3641867 at *8 (Md. July 31, 2018) (holding along similar lines that "nothing in the context" of a statute providing that a candidate's name "shall appear" and "shall remain" on a ballot after a certain deadline gave the State Board of Elections discretion to remove the name after that deadline). The context here strongly suggests that the word "shall" should be given its ordinary meaning, because the statute provides that the local legislative body *shall* designate at least one alternate member, but *may* designate a temporary alternate. LU § 4-302(f)(1), (2). Indeed, when "a statute distinguishes between 'may' and 'shall,' it is generally clear" that the word "shall" imposes a requirement or a "duty." *Kingdomware Techs., Inc.*, 136 S. Ct. at 1977; *see also Center for Biological Diversity v. United States Fish & Wildlife Serv.*, 450 F.3d 930, 935 (9th Cir. 2006) ("When 'may' and 'shall' are both used in a statute, 'the normal inference is that each is being used in its ordinary sense— the one being permissive, the other mandatory.'" (quoting *Haynes v. United States*, 891 F.2d 235, 239-40 (9th Cir. 1989))). If the Legislature had intended to give the local government discretion to decide whether to designate an alternate member, it presumably would have used the word "may" as it did in the next subsection governing temporary alternates.

Reading § 4-302(f)(1) as a requirement also furthers the purpose of the provision: to ensure the continued operations of the board when regular members are absent or recused. To be more specific, requiring a locality to designate at least one alternate member helps prevent situations in which the board cannot act at all, either because it does not have a quorum or because the remaining members are deadlocked. That a local government has a duty—as opposed to discretion—to designate at least one alternate member thus best ensures the efficiency of the board. In our view, therefore, the statute requires local legislative bodies to designate at least one alternate board member, rather than leaving that decision to their discretion.[7]

Although the City Attorney noted in her analysis that § 4-302(f)(1) does not provide any express penalty for a failure to designate an alternate member, the lack of a penalty in a statute does not necessarily mean that compliance with the statute is discretionary. Instead, the lack of a statutory penalty is relevant in determining what sanction, if any, a court might impose if the "statutory command" is not followed. *Woodfield v. West River Improvement Ass'n*, 395 Md. 377, 388-89 (2006). In that context, when determining the proper sanction for noncompliance, "courts often speak in terms of whether [statutory commands] are 'mandatory' or merely 'directory.'" *Id.* at 388 (quoting *Tucker v. State*, 89 Md. App. 295, 297-98 (1991)). "[I]f the command is 'mandatory,' some fairly drastic sanction must be imposed upon a finding of noncompliance, whereas if the command is 'directory,' noncompliance will result in some lesser penalty, or perhaps no penalty at all." *Id.* (quoting *Tucker*, 89 Md. App. at 298); *see also* 67 *Opinions of the Attorney General* 203, 209 (1982) (explaining that, generally speaking, "a provision is mandatory when failure to

---

[7] It is also worth noting that, in the land use context, local governments "are limited to the powers granted to them by the State," *County Council of Prince George's County v. Zimmer Dev. Co.*, 444 Md. 490, 504 (2015), and thus "[w]here the statute sets forth the procedure to be followed, no governing body, or subdivision thereof, has the power to adopt any other method of procedure." *State Comm'n on Human Relations v. Baltimore City Dep't of Recreation and Parks*, 166 Md. App. 33, 45 (2005) (internal quotation marks and citation omitted); *see also* 62 *Opinions of the Attorney General* 490, 494 (1977) ("[W]hen a local government exercises powers and duties pursuant to an enabling law of the General Assembly, the local government must follow the methods, procedures and substance of the State enabling law."). Although we need not decide in this opinion whether that means "shall" always creates an obligatory duty whenever used in the Land Use Article, this principle suggests that the Legislature intended that localities abide by the statute.

follow it renders the proceedings to which it relates illegal and void; it is directory when the failure to follow it does not invalidate the proceedings" (quoting *Borough of Pleasant Hills v. Carroll*, 125 A.2d 466, 469 (Pa. Super. 1956)).

Under this mandatory/directory test, the word "shall" creates a presumption that compliance is "mandatory" and that failure to comply will invalidate the proceedings or result in some other drastic sanction. *Woodfield*, 395 Md. at 388; *see also, e.g.*, *State v. Rice*, 447 Md. 594, 624-25 (2016); *Maryland State Bar Ass'n, Inc. v. Frank*, 272 Md. 528, 533 (1974); *Foy,* 235 Md. App. at 60-61, 68. However, "the use of the words 'shall' or 'may' is not controlling." *Director, Patuxent Inst. v. Cash*, 269 Md. 331, 344 (1973) (internal quotation marks and alterations omitted). The inquiry instead "turns upon the intention of the Legislature as gathered from the nature of the subject matter and the purposes to be accomplished," *Rice*, 447 Md. at 625 (quoting *Resetar v. State Bd. Of Educ.*, 284 Md. 537, 547 (1979)), and one factor in that inquiry—though by no means dispositive on its own—is whether the statute provides a penalty for noncompliance. *See, e.g.*, *Frank*, 272 Md. at 533 (holding that a lack of penalty, though not controlling, suggested that statute was directory); *Columbia Rd. Citizens' Ass'n,* 98 Md. App. at 701 ("The lack of any sanction in the statute or provision tends to militate towards a finding that the statute or provision is directory."); *see also Lamone*, 2018 WL 3641867 at *8 (explaining that "the absence of a statutory penalty is not dispositive as to whether 'shall' is mandatory" or directory).

Applying that principle here, given that there is no statutory penalty for failing to designate an alternate member, a court might conclude that the requirement in § 4-302 to designate an alternate member is "directory" in that sense of the word and therefore would not impose a penalty on a locality for failure to comply.[8]

---

[8] In particular, it seems highly unlikely that a court would void a board's proceedings (or impose some other drastic sanction) for failure to designate an alternate member when all of the regular members of the board were present and voting and the lack of an alternate member thus had no practical effect. But we do not purport in this opinion to give any definitive guidance about what sanctions a court might or might not impose under specific circumstances. In addition, even if a court were ultimately to find that no sanction for noncompliance is appropriate, a court might still decide that LU § 4-302(f)(1) imposes a ministerial duty on the local legislative body to designate an alternate member to the board and—in a proper case—issue a writ of mandamus to compel the legislative body to comply.

But even when "a provision is directory rather than mandatory," that "does not mean that it is optional—to be ignored at will." 67 *Opinions of the Attorney General* at 209 (quoting *Borough of Pleasant Hills*, 125 A.2d at 469). To the contrary, "[b]oth mandatory and directory provisions . . . are meant to be followed. It is only in the effect of non-compliance that a distinction arises." *Id.* (internal quotation marks omitted). Put another way:

> When a legislative body commands that something be done, using words such as "shall" or "must," rather than "may" or "should," we must assume, absent some evidence to the contrary, that it was serious and that it meant for the thing to be done in the manner it directed. In that sense, the obligation to comply with the statute . . . is both mandatory and directory. The relevant question in such a case is [merely] whether the sanction sought for noncompliance is an appropriate one.

*Woodfield*, 395 Md. at 388-89 (quoting *Tucker*, 89 Md. App. at 298); *see also In re James S.*, 286 Md. 702, 707 (1980) ("The differences between mandatory and directory, or between prohibitory and permissive, represent a continuum involving matters of degree instead of separate, mutually exclusive characteristics." (internal quotation marks and citations omitted)).[9] Therefore, in our view, the lack of a statutory penalty does not

---

[9] In recent years, the Court of Appeals has been moving away from the mandatory/directory distinction. *See Woodfield*, 395 Md. at 388 (explaining that "the mandatory/directory approach to determining the consequences of a failure to comply with a statutory command," though a "traditional" approach, "is an artificial one that addresses the appropriate question in a circular fashion"). Instead, where the statute does not provide a sanction for noncompliance, the Court has said it will "attempt[] to discern the overall purpose of the statute and then determine which, if any, sanction will best further that purpose." *Id.* at 389 (quoting *Tucker*, 89 Md. App. at 299). Although the "same result is likely to be achieved by using a mandatory/directory approach," the Court has said that the purpose-based approach "is the better analytical framework for determining the consequence of noncompliance with a statutory mandate." *Id.* at 389-90; *but see Lamone*, 2018 WL 3641867 at *7-8 (discussing the mandatory/directory dichotomy); *Rice*, 447 Md. at 624-25 (continuing to rely on the mandatory/directory dichotomy, though focusing on the statutory purpose in the analysis).

change the fact that § 4-302(f)(1) is meant to be followed.  *See* 67 *Opinions of the Attorney General* at 209.[10]

We thus conclude that, despite the absence of a statutory penalty, § 4-302(f)(1) of the Land Use Article imposes an obligation upon local legislative bodies to designate at least one alternate member.  Although the absence of a statutory penalty is relevant in determining what sanction, if any, a court would impose on a locality for failure to comply with this requirement, the absence of an express penalty does not mean the Legislature intended to leave the decision of whether to designate an alternate member to the discretion of the locality.

## III

### Conclusion

In sum, we conclude that the three-year term in § 4-302(c) of the Land Use Article for the members of a local board of appeals applies to both the board's regular members and its alternate members.  We also conclude that the use of the word "shall" in § 4-302(f)(1) imposes a requirement on local legislative bodies to designate at least one alternate member to the board.

Brian E. Frosh
Attorney General of Maryland

Jeffrey P. Hochstetler
Assistant Attorney General

Patrick B. Hughes
Chief Counsel, Opinions and Advice

*Karen L. Federman Henry, former Assistant Attorney General, contributed significantly to the preparation of this Opinion.

---

[10]  On occasion, in other contexts, the word "directory" has been used somewhat differently to mean "to exhort the doing of [a] thing . . . without requiring it." *In re Abiagail C.*, 138 Md. App. 570, 581 (2001) (concluding that the statutory deadline for an arbiter's action was directory, not mandatory); *see also* 74 *Opinions of the Attorney General* 53, 59 n.5 (1989) (interpreting a condition in the budget as "directory," meaning in that context that the agency need not follow it but "should give it careful, good-faith consideration").  However, regardless of the differing ways in which the mandatory/directory distinction may have been applied over the years in other contexts, we conclude that in the context before us the mere lack of an express penalty for noncompliance does not mean that the statutory command to designate an alternate member is optional.